Leoncia **VECINA**, Appellant,

v.

Jesse **BROWN**, Secretary of Veterans Affairs, Appellee.

No. 92–678.

United States Court of Veterans Appeals.

June 21, 1994.

Leoncia Vecina, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Karen P. Galla, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and MANKIN and HOLDAWAY, Judges.

HOLDAWAY, Judge:

Appellant, Leoncia Vecina, appeals a February 7, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which determined that "new and material" evidence had not been submitted to reopen a claim for recognition of appellant as the surviving spouse of the veteran for dependency and indemnity compensation (DIC) benefits. The Court will remand the decision of the BVA.

## BACKGROUND

Appellant married the veteran, Florentino Vecina, in 1921. The veteran joined a recognized guerilla unit in September 1944, and was last seen alive when a prisoner of war, in March 1945. In March 1946, the veteran was declared dead under the Missing Persons Act.

In January 1947, appellant applied for DIC benefits. On her application she noted that she and the veteran had four children. In July 1952, the VA awarded appellant DIC benefits as the unremarried widow of the veteran, which included an award of benefits for three minor children.

In October 1952, the VA Regional Office (RO) received a letter from Dr. Vicente Ignacio, who claimed that appellant had been living as the common-law wife of another man, Meliton Bernardo, for approximately seven years, and that she had borne two

children, Bernardo Bernardo and Rosalinda Bernardo, from that relationship. In December 1952, the RO withheld payment of her DIC benefits while it conducted an investigation into her marital status. Both appellant and Meliton Bernardo were deposed. Both admitted to participating in an extramarital affair during the veteran's lifetime. Both appellant and Meliton Bernardo explained that they met occasionally, and did not reside together. Furthermore, both of them thought that appellant's son, Bernardo Bernardo, was actually the veteran's child. In August 1953, the Director of Dependents and Beneficiaries determined that appellant's relationship with Meliton Bernardo was clandestine, and she continued to be considered as the unremarried widow of the veteran.

However, in November 1953, the Acting Chief of the Dependents Division determined that appellant's claim should be reviewed again to determine whether her relationship with Meliton Bernardo during the lifetime of the veteran resulted in a forfeiture of her right to DIC benefits. In December 1953, the RO informed appellant that because of her affair with Meliton Bernardo she was not regarded as having continuously cohabitated with the veteran during his lifetime, and that her DIC benefits were being terminated.

Appellant corresponded with the RO several times from 1956 to 1962, requesting reinstatement of her DIC benefits. Appellant was repeatedly informed that her benefits had been terminated because of her infidelity during marriage, and that she needed to submit "new and material" evidence to reopen her claim.

In January 1972, appellant sent a letter to the RO requesting that her DIC benefits be restored. She noted that her relationship with Meliton Bernardo had been terminated upon his death in 1962 and enclosed a copy of his death certificate. In response, the RO informed her that Public Law 91–376 permitted the restoration of DIC benefits to certain widows whose benefits had been terminated upon remarriage or other conduct. Thereafter, appellant asserted that the veteran had died on March 13, 1945, and that she had commenced an affair with Meliton Bernardo in 1946 which continued until he died in 1962.

In April 1972, the RO informed appellant that her benefits could not be reinstated under Public Law 91–376 as she had not continuously cohabitated with the veteran prior to his death.

In June 1976, she requested that her claim be reconsidered based on "new and material" evidence and submitted an affidavit from her son, Bernardo Bernardo, who claimed that he was the veteran's child and that he would be willing to use the veteran's surname, and an affidavit from a neighbor, who claimed that appellant and the veteran continuously lived together until the veteran's death. In July 1976, the RO informed appellant that her DIC benefits had been terminated because she had an extramarital affair prior to the veteran's death, and that both she and Meliton Bernardo admitted this fact during the 1952 field investigation. Appellant was informed that her later assertions that the affair did not begin until after the veteran's death contradicted her prior testimony, and were deemed unreliable.

In November 1988, appellant attempted to reopen her claim again, and resubmitted previously submitted affidavits, and death certificates for Meliton Bernardo and Juanita Bernardo, Meliton Bernardo's wife. The RO repeatedly informed appellant that her claim would continue to be denied, until she submitted "new and material" evidence. In May 1990, appellant appeared at a personal hearing and testified that her relationship with Meliton Bernardo began after the veteran's death. She also attempted to impeach the sworn statement made in 1953 by now averring, for the first time, a language problem. In June 1990, the RO confirmed and continued its previous denial of the restoration of appellant's DIC benefits. In September 1990, she submitted a Notice of Disagreement. In May 1991, appellant submitted a VA Form 1–9 (Appeal to the Board), which was accompanied by an affidavit signed by 85 residents of the appellant's village, all of whom attested that the veteran and appellant were never separated until the veteran died. In February 1992, the Board determined that appellant's testimony from her personal hearing was not "new and material" evidence, i.e., there was no reasonable possibili-

ty it could change the outcome, and denied reopening and readjudicating her claim. No mention was made in the decision of the villagers' "group" affidavit.

## ANALYSIS

■ The issue before the Court is whether appellant has submitted "new and material" evidence pertinent to her claimed status as a surviving spouse, and is thus plausibly a member of the class for which DIC benefits were intended. *See Aguilar v. Derwinski*, 2 Vet.App. 21, 23 (1991) (surviving spouse must submit proof of marital status). A surviving spouse is defined in 38 U.S.C. § 101(3) as:

> [A] person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death . . . and has not remarried.

Thus, the narrow issue presented is whether the claimant lived with the veteran "continuously." From a plain reading of the statute, it is clear that the fact that there was an illicit relationship between the claimant and someone else is, by itself, not dispositive. Certainly, the fact of an illicit relationship is relevant as to whether the cohabitation was continuous. However, whether such a relationship by a spouse would defeat the requirement of continuous cohabitation would depend on the duration, frequency, and conditions of the illicit relationship. Short, clandestine, and infrequent meetings, that were merely trysts with a lover, would not necessarily mean that a concurrent state of continual cohabitation could not or did not exist with the wronged spouse.

The RO's 1953 adjudication, which terminated appellant's DIC payments, was final and could be reopened only upon the presentment of "new and material" evidence. *See* 38 U.S.C. §§ 5108, 7104(b). In *Manio v. Derwinski*, 1 Vet.App. 140 (1991), this Court established that the BVA must perform a two-step analysis when the veteran seeks to reopen a claim based upon new evidence. First, the BVA must determine if the veteran has submitted "new and material" evidence. If so, the Board must review "the veteran's claim in light of *all* the evidence, both new and old." *Id.* at 145. For this purpose, the credibility of the evidence may generally be presumed. *See Justus v. Principi*, 3 Vet. App. 510, 513 (1992).

■ "New" evidence is "that which is not merely cumulative of other evidence of record." *Cox v. Brown*, 5 Vet.App. 95, 98 (1993). "Material" evidence is relevant to and probative of the issue at hand, and of sufficient weight and significance that there is a reasonable possibility that the new evidence, when considered in light of all the evidence, would change the outcome. *Id.; see Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). Whether evidence submitted to reopen a previously disallowed claim is "new and material" under 38 U.S.C. § 5108 is a question of law which this Court reviews de novo. *See Colvin*, 1 Vet.App. at 174; *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992).

■ Appellant's newly submitted evidence consists of her testimony from the May 1990 personal hearing, and an affidavit from 85 villagers attesting that appellant and the veteran continuously lived together until the veteran's death. Appellant's recent testimony denying any relationship with her paramour until after her husband's death contradicts her former sworn statement made some 30 years ago, which was contemporaneous with the events and was consistent with a sworn statement from her now deceased paramour. Given these facts, the Board's decision not to reopen based on appellant's most recent and obviously self-serving statement, which was largely cumulative anyway, was not incorrect. There is no reasonable possibility that her more recent statement, in face of all the other and more contemporaneous evidence, would change the outcome. However, the Board entirely omitted consideration and discussion of the affidavit of her fellow villagers which, if true, a matter for the fact finder to determine, tends to corroborate the 1953 testimony of appellant and her paramour that she lived continuously with the veteran until his death. While a "group" affidavit may be considered with some degree of skepticism, it cannot be totally ignored. The failure of the Board to consider

this evidence and give reasons or bases for its acceptance or rejection was error.

The February 7, 1992, decision of the BVA is VACATED and the matter REMANDED for adjudication consistent with this opinion.