**Arthur E. DURAN, Appellant,**

v.

**Jesse . BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–388.**

United States Court of Veterans Appeals.

Argued July 14, 1994.

Decided Dec. 13, 1994.

Michael P. Horan and Bonnie M. Marinelli, were on the brief for appellant.

Michael P. Butler, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and David W. Engel, Deputy Asst. Gen. Counsel, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and MANKIN, Judges.

FARLEY, Judge:

The appellant, veteran Arthur E. Duran, appeals from a January 28, 1993, decision of the Board of Veterans' Appeals (BVA or

Board) which determined that since he had failed to submit new and material evidence regarding his previously and finally denied claim for entitlement to service connection for post-traumatic stress disorder (PTSD), he was not entitled to have his claim reopened and adjudicated. The Board, in its decision, also remanded to the VA regional office (RO) the appellant's claims of entitlement to a non-service-connected pension and to secondary service connection for depression due to service-connected disabilities and chronic pain syndrome, finding that these claims had not been properly developed for appellate review.

The appellant contends, inter alia, that the Board erred in finding that he had not submitted new and material evidence and in failing to address a claim that clear and unmistakable error (CUE) had occurred in previous adjudications. (Although the appellant's brief argued that the claims for secondary service connection and a non-service-connected pension were improperly remanded, appellant's counsel conceded at oral argument that these claims were appropriately before the RO; therefore, these claims are not presented for our review.) The Court will vacate and remand the decision of the Board regarding the issue of new and material evidence and will dismiss the appellant's claim that CUE occurred in the January 28, 1987, RO decision as the Court finds this allegation does not survive as a viable claim in light of the recent decision of the United States Court of Appeals for the Federal Circuit in *Smith v. Brown*, 35 F.3d 1516 (Fed. Cir.1994), *rev'g Smith v. Principi*, 3 Vet.App. 378 (1992) (mem. decision).

I. Factual and Procedural Background

The appellant served on active duty from July 1966 to May 1969. Record (R.) at 15, 16. The report of his induction physical notes mild pes planus and defective vision and the discharge physical is essentially negative for defect or disease, noting only that the appellant had poor vision correctable to 20/20 with glasses. Record (R.) at 18–19, 41–42. Although the appellant's discharge Form 214 indicates he had no foreign or sea service, R. at 16, his service records, to the contrary, indicate medical treatment at Camp Smedley D. Butler, USMC, located in

Okinawa, Japan, and assignment with the Pacific Fleet Marine Force, from July 1967 to August 1968. R. at 31, 35–36, 38–39, 87–88, 92, 125–26, 130. In March 1969, the appellant's brother died in combat during his tour of service in Vietnam. *See* R. at 300, 325–26. The appellant, while still on active duty, was assigned to accompany his brother's body home for burial. *See* R. at 87–88, 125–26. In April 1969 the appellant requested, and in May 1969 received, a discharge from service as a sole surviving son. R. at 91.

At some point following service, VA awarded the appellant service connection for a fracture of the right lower leg and a fracture of the lip of the right talus, respectively rated 20% disabling as of December 20, 1985, and 10% disabling as of November 8, 1984, for a combined total rating of 30%. *See* R. at 111, 162–63. Beginning in August 1985 and continuing through the inception of this appeal, the appellant has received numerous diagnoses of PTSD from both VA and private physicians. *See* R. at 55, 58, 82, 140, 146, 150, 174, 213, 236, 239, 264–71, 310, 354. Dr. Lynn Baumgartner performed a psychiatric examination of the appellant for VA on November 21, 1986, and diagnosed "post-traumatic stress neurosis, moderately severe, chronic" on the basis of a history of the appellant's having gone "to Vietnam to collect [his brother's] body bag and escort the body bag back to the States.... [The appellant] states that he has continued to have nightmares of seeing the body bag and the process of claiming the body." R. at 140–42. In January 1987, the RO denied service connection for PTSD, in part relying on the absence of a "life-threatening" stressor. R. at 162–63. The appellant appealed this decision. R. at 179. This denial was confirmed by rating decision dated June 5, 1987. R. at 192. On June 19, 1987, VA issued a Supplemental Statement of the Case (SSOC). R. at 199.

In January 1988, the Board denied service connection for PTSD. R. at 207–11. The Board relied in part on the absence of a life-threatening stressor to the appellant to support their finding that the PTSD diagnosis was not "adequately supported by the objec-

tive record." R. at 210. Thereafter, the appellant provided an affidavit from a fellow serviceman relating his personal knowledge that he had seen the appellant in Vietnam, R. at 250, but in March 1990, the Board again denied the appellant's claim for service connection for PTSD, finding that the newly submitted evidence did not "alter the factual basis upon which the prior decision was predicated." R. at 261.

Attempting to reopen his claim (R. at 276), the appellant submitted two sworn statements from his sister describing his participation in the events surrounding the death of their brother and attesting to the extremely close relationship the appellant had had with his brother. *See* R. at 278, 325–26. In January 1991, the appellant and his wife provided sworn testimony before a VA hearing officer. The appellant testified for the first time that, when he met his brother's body in San Francisco, he opened the coffin and body bag inside the coffin, but he could not tell if it was his brother because the body looked like "smashed meat." He testified further that he did not recall how long he viewed the body; that he smelled formaldehyde; that he does not remember the funeral; that he has had no other traumatic experiences in his life such as a fire, flood, or automobile accident; and that he sees a bag in his nightmares and wonders if his brother is alive in Vietnam. R. at 289–93. The appellant's wife testified that she met the plane in which the appellant escorted his brother's body home; that the appellant was "very torn up and was yelling" at the funeral home; that he ordered his sister and mother not to open the casket; and that he kept saying that it was his brother because he had opened the casket in San Francisco and had gotten in trouble for so doing. R. at 288. Other evidence added to the record included an excerpt of the criteria for PTSD as listed in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (3rd ed. Rev.) [hereinafter DSM–III–R]. R. at 301–02. On March 15, 1991, a hearing officer's decision confirmed the prior denial, and on March 25, 1991, the appellant filed a Notice of Disagreement. *See* R. at 337. A Statement of the Case was issued on May 1, 1991. R. at 335–38. The Board, in January 1993, reject-

ed the appellant's attempt to reopen his claim for entitlement to service connection for PTSD, finding that he had not submitted new and material evidence as required by 38 U.S.C. § 5108. R. at 6–13. It is from this denial that the appellant appeals to this Court.

In addition, the appellant also argues that the issue of CUE under 38 C.F.R. § 3.105(a) (1993) in the January 1987 rating decision was raised in a letter to the RO adjudication officer dated May 21, 1991, in which his representative specifically asked "that a Supplemental Statement of the Case [SSOC] be issued so that this issue can be properly addressed by the Board of Veterans['] Appeals and if need be the Court of Veterans Appeals." R. at 331–32. It is not clear when the VA received this letter but the copy in the record on appeal bears date stamps of "Jun 13 1991" and "Jun 21 1991." R. at 331. The record on appeal does not contain any evidence of a decision on the CUE claim. An SSOC was issued on June 28, 1991 (R. at 342–44), but it dealt only with "new evidence received" and did not discuss the CUE claim. R. at 342. In a statement dated in July 1992, the appellant's representative requested that the Board refer the issues of a non-service-connected pension and secondary service connection based on depression and chronic pain syndrome to the regional office. R. at 346–48.

During oral argument, counsel for the Secretary candidly and commendably conceded that the appellant's claim of CUE had been pending unresolved before the RO since May 1991, and that the appellant was entitled to an adjudication of that claim. After oral argument, Deputy Assistant General Counsel David Engel submitted to the Court a copy of his letter, dated July 19, 1994, and addressed to adjudication officer Jimmy H. Shepherd, that states the appellant's claims file was being forwarded for any adjudicative action "deemed proper" on the appellant's pending claims.

However, on August 12, 1994, the United States Court of Appeals for the Federal Circuit issued its decision in *Smith, supra.* In *Smith,* the Federal Circuit held, inter alia,

that 38 C.F.R. § 3.105(a) was applicable only to "review of AOJ (Agency of Original Jurisdiction) adjudicatory decisions and not to those of the Board." *Smith,* 35 F.3d at 1527. On August 30, 1994, this Court ordered the Secretary to submit a memorandum of law discussing the impact of *Smith* on the appellant's CUE claim, and offered the appellant an opportunity to respond. Counsel for the Secretary submitted his response to the Court's order on October 6, 1994, alleging that the appellant's CUE claim was a nullity after *Smith.* The appellant responded on November 7, 1994, stating that *Smith* "underscore[s] this Court's power and responsibility to compel the VA to adjudicate [the appellant's] claim of clear and unmistakable error. [The appellant] submits that this Court does have the power to remand this case to the Secretary with instructions to adjudicate the claim of clear and unmistakable error in an expeditious manner." Appellant's brief at 11.

## II. New and Material Evidence

■ A previously and finally denied claim "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 7104(b). The exception to this rule states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108; *see also* 38 U.S.C. § 7104(b); *Spencer v. Brown,* 4 Vet.App. 283, 286–87 (1993); *Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991). Therefore, once a BVA decision becomes final under § 7104(b), absent new and material evidence presented or secured, the BVA cannot reopen or readjudicate the claim. 38 U.S.C. § 5108; *see also McGinnis v. Brown,* 4 Vet.App. 239, 244 (1993) (BVA reopening is unlawful when no new and material evidence has been submitted).

■ When a claimant seeks to reopen a previously and finally denied claim, the Board is required to conduct a two-step analysis to determine whether new and material evidence has been presented. *See Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, the Board must decide whether the evidence presented or secured is new and material. Second, if new and material evidence has been submitted, the Board must then adjudicate the claim de novo considering all evidence, both new and old. *See Manio,* 1 Vet.App. at 145.

■ In conducting the first part of the *Manio* two-step analysis under § 5108, evidence is to be considered new when it is not merely cumulative of other evidence in the record, and material when relative to and probative of the issue at hand, and of sufficient weight to present a reasonable possibility that the new evidence, when viewed in the context of all the evidence, new and old, would change the disposition of the claim. *See, e.g., Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991); *see also Manio, supra.* Whether evidence is new and material is a question of law this Court reviews de novo. *See Spencer,* 4 Vet.App. at 287; *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *see also* 38 U.S.C. § 7261(a)(1). At this stage, the Board is precluded from considering the credibility of the newly submitted evidence; strictly for purposes of determining whether new and material evidence has been presented, the Board must presume that the newly submitted evidence is credible. *See Justus v. Principi,* 3 Vet.App. 510, 513 (1992); *see also Cuevas v. Principi,* 3 Vet.App. 542, 547–48 (1992). This is not to say that the *Justus* credibility rule is boundless or blind; if the newly submitted evidence is inherently false or untrue, for example, a male veteran's testimony that his alleged service-connected disabilities are the result of complications associated with having given birth, the *Justus* credibility rule simply would not apply. As the author of *Justus* has subsequently noted, "[t]he evil pointed to in *Justus* [was the] weighing and evaluating [of] new evidence in a vacuum." *Guimond v. Brown,* 6 Vet.App. 69, 72 (1993). *Justus* does not require the Secretary to consider the patently incredible to be credible. Moreover, any presumption of credibility required by *Justus* during the first step of the *Manio* two-step process is inapplicable during the second step when the claim is adjudicated de novo by evaluating

both the weight and credibility of all the evidence of record. *See Justus*, 3 Vet.App. at 513.

 There is also the issue of what evidence is to be considered in conducting the first part of the *Manio* test. Many, if not most, unsuccessful attempts to reopen would not add to the claims file any evidence which would affect future attempts to reopen; however, that possibility cannot be·foreclosed. For example, while a diagnosis of a current disability might not be material to the issue of service connection, and thus not require reopening under 38 U.S.C. § 5108, such a diagnosis could become very material if relied upon in a subsequent medical opinion relating the current condition back to service. *Cf. Moray v. Brown*, 5 Vet.App. 211, 214 (1993). Thus, the Court in *Glynn v. Brown*, 6 Vet.App. 523, 528–29 (1994), interpreted 38 U.S.C. § 5108 as mandating review of "all of the evidence submitted by a claimant since the last final denial of the merits of a claim in order to determine whether a claim must be reopened and readjudicated on the merits." *Ibid.* A § 5108 determination of "new and material evidence" cannot be made by looking solely at evidence submitted since the last refusal to reopen for lack of new and material evidence. Here, the appellant's claim for entitlement to service connection for PTSD was previously and finally denied in a January 1988 Board decision. *See* R. at 207–11. Thereafter, the Board in 1990 refused to reopen the appellant's claim after it determined that he had failed to submit new and material evidence. Although the Board in the decision here on appeal purported to evaluate only evidence submitted since the 1990 BVA denial of reopening, in conducting our de novo review, *Glynn* requires that this Court determine whether new and material evidence has been submitted by examining the body of evidence accumulated since the 1988 final denial on the merits. *Ibid.*

 Relevant, non-duplicative evidence obtained since the previous final denial in 1988 includes, inter alia, (1) the July 1989 affidavit of Pete Montoya, Jr., attesting to having conversed with the appellant in Vietnam in November or December 1967, submitted to show that the appellant had been to Vietnam during service, R. at 250; (2) VA medical progress notes from 1989 and 1990 indicating that the appellant dreamed of his brother's body being brought home and including a diagnosis of severe PTSD, *see* R. at 264–71; (3) a January 1991 affidavit of Norma Yates, the appellant's sister, attesting that the appellant had escorted his brother's body home and was a pallbearer at his brother's funeral, R. at 278; (4) the appellant's testimony before a VA hearing officer in January 1991, R. at 289–93; (5) the appellant's wife's testimony, R. at 288; (6) two newspaper clippings indicating the appellant's brother had died in Vietnam and that the appellant was a pallbearer, R. at 300; (7) excerpts from the DSM–III–R, R. at 301–02; (8) an affidavit from Donald Stoops, D.O., stating that the appellant suffers from post-traumatic stress neurosis, R. at 319; (9) a May 1991 letter from Norma Yates relating that the appellant and his deceased brother were extremely close growing up, that the appellant took his brother's death very hard and has not been the same since, and that the appellant has isolated himself from family and friends, R. at 325–26; and (10) a diagnosis from Arthur Bieganowski, M.D., that the appellant suffers post-traumatic Vietnam stress reaction, R. at 354. For purposes of determining whether the appellant has submitted new and material evidence to warrant reopening of his claim, the Court will focus on the testimony of the appellant and his wife before the VA hearing officer.

Had the Board properly applied *Justus* and assumed the testimony to be credible in conducting the first part of the *Manio* two-step analysis, it is clear that the Board could only have found the appellant's description to have been new and material. Indeed, the Board itself stated that "[c]ertainly, if the veteran observed·his brother's body under these circumstances shortly after his brother's death, such an event would be shocking and outside the range of human experience." R. at 11. The appellant's testimony was certainly new, and clearly presented a reasonable likelihood of changing the outcome of his claim. *See, e.g., Vecina v. Brown*, 6 Vet.App. 519, 522–23 (1994); *Sklar*, 5 Vet. App. at 145; *Cox*, 5 Vet.App. at 98; *Colvin*, 1

Vet.App. at 174; *see also* DSM–III–R, at 247 (stating that the "essential feature of [PTSD] is the development of characteristic symptoms following a psychologically distressing *event that is outside the range of usual human experience* " (emphasis added)). Assuming the credibility of the appellant's testimony regarding his having viewed the body of his brother, and the corroborative testimony of his wife, as required by *Justus,* the Court concludes that this evidence is both new and material and that the BVA erred in not reopening the appellant's claim under 38 U.S.C. § 5108.

■ It appears that, despite its errors in failing to follow *Justus* and in finding no new and material evidence, the Board did adjudicate the merits of the claim after considering all the evidence and found the appellant's testimony unpersuasive in light of all the other evidence of record. In this instance, however, the Court cannot hold the Board's errors to have been harmless. *See Guimond,* 6 Vet.App. at 72 (holding harmless a Board finding of no new and material evidence when Board "in fact" reopened and adjudicated the claim); *see also* 38 U.S.C. § 7261(b) (requiring the Court to account for the rule of prejudicial error); *cf. Yabut v. Brown,* 6 Vet.App. 79, 85 (1993). As counsel for the appellant aptly argues in his brief, had the Board found the appellant's evidence new and material and reopened his claim, the Secretary would have been required by 38 U.S.C. § 5107(a) to assist the appellant "in developing the facts pertinent to the claim" and by 38 U.S.C. § 5107(b) to afford the appellant the "benefit of the doubt" where "there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter." *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990); *see also Counts v. Brown,* 6 Vet.App. 473, 481–82 (1994) (Farley, J., concurring). Indeed, as the appellant's counsel has pointed out, the Secretary, in fulfilling his statutory duty to assist, could well have identified and secured additional supporting medical records from the appellant's private physicians, conducted a mental examination of the appellant in light of his testimony concerning his having viewed his brother's remains, and obtained military records documenting the circumstances surrounding the death of the appellant's brother which could serve to support the appellant's testimony as to the condition of the body. *See* Appellant's Brief at 16–17. For these reasons, we cannot find the Secretary's failure to reopen the appellant's claim to have been harmless, and therefore a remand is required.

### III. The Standards to be Used in Evaluating PTSD Claims

On remand, the Board will have the opportunity to address the proper standards to be used in evaluating mental disorders in general and the appellant's claim of PTSD in particular. Although 38 C.F.R. § 4.125 (1993) purportedly adopts the nomenclature of the 1980 edition of the DSM–III, that reference appears to be outdated. The DSM–III was revised seven years ago, in 1987; the revised version is generally referred to as the DSM–III–R. Even more significant, as the Court was advised by counsel for the appellant on the eve of oral argument, the fourth edition of the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) was published this year. The VA ADJUDICATION PROCEDURE MANUAL, M21–1 [hereinafter Manual M21–1], on the other hand, incorporates the nomenclature of the DSM–III–R, but the explanation of a stressor in DSM–III–R is slightly but significantly different from that appearing in the Manual M21–1. Whereas the DSM–III–R recognizes that seeing another person who has recently been seriously injured or killed could be a sufficient stressor for PTSD, *see* DSM–III–R, at 247–48, the Manual M21–1 requires actually having witnessed the injury or death to be a sufficient stressor to support a PTSD diagnosis, *see* Manual M21–1, Part VI, para. 7.46(b)(1). In another matter, the Secretary has advised this Court that the BVA Chairman has requested a General Counsel opinion on the issue. That opinion could be significant in the adjudication of this matter on remand.

Another problem was pointed out by the appellant's representative in his claim of CUE in the 1987 RO decision which denied service connection for PTSD, at least in part,

because it could not find a stressor which it deemed to have been "life-threatening." *See* R. at 162–63. Similarly, in the 1988 Board denial on the merits of the appellant's claim for PTSD, the Board stated:

> In order to justify the diagnosis of [PTSD], four basic elements must be satisfied, including the existence of a recognizable stressor that would evoke significant symptoms of distress in almost any one. While the Board is cognizant of the effect the death of his brother could have had on the veteran, *such an incident is not a life-threatening stressor to the veteran.*

R. at 210 (emphasis added). In the 1993 denial of reopening here on appeal, the Board again utilized the "life-threatening stressor" language when it stated:

> Although a brother's death would evoke distress in most people, *this incident cannot be considered a life-threatening stressor to the veteran* such that a granting of service connection for PTSD would be appropriate.

R. at 12 (emphasis added). It is apparent from these passages that the Board considered the absence of a documented life-threatening stressor to be dispositive of the appellant's claim for PTSD. Although the DSM–III–R notes that the most common trauma or stressor which causes PTSD is "a serious threat to one's life or physical integrity," it also lists several other traumas not involving a life-threatening stressor to the afflicted individual which would support a PTSD diagnosis. DSM–III–R, at 247–48; *see also* Manual M21–1, Part VI, para. 7.46(b)(1); 38 C.F.R. § 4.125 (stating that the psychiatric nomenclature used to evaluate mental disorders is based on the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS). Therefore, while the documentation of a life-threatening stressor under DSM–III–R certainly supports a PTSD diagnosis, such a stressor is not a required element for a PTSD diagnosis.

### IV. The Appellant's Clear and Unmistakable Error Claim

Pursuant to 38 C.F.R. § 3.105(a), the Secretary has undertaken the responsibility to revise previous decisions which were the product of "clear and unmistakable error." *See Russell v. Principi,* 3 Vet.App. 310, 313–14 (1992) (en banc); *see also Chisem v. Brown,* 4 Vet.App. 169, 176 (1993). On May 21, 1991, after the appellant had appeared before the VA hearing officer, his accredited representative raised a claim of CUE under § 3.105(a) in a letter to the RO in Waco, Texas:

> This is a claim based on clear and unmistakable error on a rating decision dated January 28, 1987. In addition, we claim that all following ratings concerning this veteran's PTSD case including BVA decisions are invalid based on the clear and unmistakable error in the rating of 1–28–87.

R. at 331. The January 1987 RO decision had been affirmed in a subsequent 1988 Board decision which, like the RO, denied the appellant's underlying claim for service connection for PTSD in part because of the absence of a life-threatening stressor.

As noted in Part I, the record on appeal does not reflect that the RO has taken any action on the CUE claim. During oral argument, counsel for the Secretary, while not conceding that the letter quoted above was sufficiently specific to survive a "*Fugo* test," (*see Fugo v. Brown,* 6 Vet.App. 40, 44 (1993)), candidly and commendably conceded that the appellant's claim of CUE has been pending unresolved before the RO since May 1991. Both parties agree that the claim should have been adjudicated and the appellant urges this Court to remand with a direction to the Board to address the CUE claim. While the Court agrees that the record contains no justification for allowing the CUE claim to languish unresolved, a recent decision of the United States Court of Appeals for the Federal Circuit makes a remand unnecessary.

In *Smith, supra,* the Federal Circuit held that "the CUE review authority in § 3.105(a) [relates] only to review of AOJ adjudicatory decisions and not to those of the Board." *Smith,* 35 F.3d at 1527. The Court in *Smith* noted that in the statutorily created VA administrative structure,

> the Board is an appellate authority, and the AOJs are trial-level adjudicators. This too tends to preclude the inference that

the drafters of § 3.105(a) intended CUE review to apply to both Board and AOJ decisions, since it would, oddly, permit an inferior to collaterally review the actions of a superior. . . .

*Id.* at 1526. Therefore, an AOJ would be precluded from considering a claim of CUE arising from a previous AOJ decision which had been appealed to the BVA. Permitting the consideration of such a claim would result in the AOJ, the "inferior" tribunal, reviewing a final decision of the Board, the "superior" tribunal. This is precisely the type of collateral review which was proscribed under *Smith.*

After *Smith,* an appellant may still assert a claim of CUE under 38 C.F.R. 3.105(a) of a "prior, unappealed AOJ decision." *Smith,* 35 F.3d at 1522. However, under the circumstances of this case, i.e., where an AOJ decision was appealed to and affirmed by the Board and thus subsumed by the Board's decision, no claim of "clear and unmistakable error" under 38 C.F.R. § 3.105(a) exists as a matter of law with respect to that AOJ decision. *See Smith,* 35 F.3d at 1527; *see also Talbert v. Brown,* 7 Vet.App. 352, 355–56 (1995); 38 C.F.R. § 20.1104 (when a determination of an AOJ is affirmed by the BVA, the AOJ determination is "subsumed" by the final appellate decision). There being no pending CUE claim, none can be remanded.

### V. Conclusion

On consideration of the parties' oral arguments and briefs and the record on appeal, the January 28, 1993, decision of the Board of Veterans' Appeals is VACATED and RE-MANDED for proceedings consistent with this opinion.