Citation Nr: 1443670 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 05-13 239 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa


THE ISSUES

1. Entitlement to service connection for bilateral pes planus. 

2. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for an acquired psychiatric disorder, to include as secondary to service-connected disabilities.

3. Entitlement to service connection for an acquired psychiatric disorder, to include as secondary to service-connected disabilities.

4. Entitlement to a rating greater than 10 percent for degenerative joint disease of the right wrist.

5. Entitlement to a rating greater than 10 percent for degenerative joint disease of the left wrist.

6. Entitlement to an initial rating greater than 10 percent from December 10, 2002 to April 18, 2014, and entitlement to a compensable rating from April 18, 2014, for degenerative joint disease of the thumbs and great toes. 

REPRESENTATION

Appellant represented by: John S. Berry, Attorney


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

J. Rutkin, Counsel


INTRODUCTION

The Veteran completed a career in the Air Force, with active service from November 1965 to February 1969, and from September 1971 to May 1992. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from August 2003 and October 2012 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Des Moines, Iowa. 

The Board's June 2007 denial of service connection for an acquired psychiatric disorder on a secondary basis was vacated and remanded by the United States Court of Appeals for Veterans Claims (Court) in a November 2009 memorandum decision. The Court entered judgment in December 2009. The Court's decision was based on a finding that the secondary service connection claim was inextricably intertwined with the issue of whether service connection was warranted on a direct basis, which the Board had remanded for further action. 

The Veteran and his spouse testified at a hearing before the undersigned in August 2005. A transcript is of record. 

The Board remanded the claims for a psychiatric disorder and bilateral pes planus in June 2007 and April 2011 for further action and development. They now return for appellate review. 

Since the Board's April 2011 remand, service connection for degenerative joint disease (DJD) of the toes was granted in an October 2012 rating decision. Therefore, the claim for bilateral pes planus with DJD has been recharacterized as limited to the issue of service connection for pes planus. 

With regard to the increased rating claims for degenerative joint disease of the bilateral wrists, some clarification of the procedural history is warranted. Although the October 2012 rating decision on appeal ostensibly only addressed the evaluation of the Veteran's toe and thumb arthritis, the RO found that the evaluation of the bilateral wrist disorders was encompassed in the general determination of the proper rating or ratings to be assigned the Veteran's service-connected arthritis of multiple joints, and therefore stemmed from that decision. Indeed, the October 2012 rating decision states that a 10 percent rating is granted for degenerative joint disease of the thumbs and great toes "previously rated as bilateral carpometacarpal degenerative joint disease," i.e. the bilateral wrists. In other words, the 10 percent rating was meant to compensate for arthritic involvement of multiple minor joint groups. See 38 C.F.R. § 4.71a, Diagnostic Code 5005 (2013). The Veteran timely submitted a NOD to this decision in December 2012, arguing that the DJD of the toes and thumbs should be rated separately from DJD of the wrists. The bilateral wrist disorder claims were therefore added to the April 2014 statement of the case (SOC), which granted separate 10 percent ratings for DJD of each wrist. This grant was effectuated in an April 2014 rating decision. The Veteran then perfected an appeal as to all the issues listed in the April 2014 SOC in a May 2014 VA Form 9. 
Accordingly, the evaluation of the bilateral wrist DJD stems from the October 2012 rating decision, an appeal of which has been perfected to the Board, as part and parcel of the evaluation of the Veteran's DJD of multiple joints.

The service connection claim for a psychiatric disorder, and the claims for increased ratings for the bilateral wrists, toes, and thumbs, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. An unappealed February 1993 rating decision last denied the service connection claim for an acquired psychiatric disorder. 

2. Additional evidence received since the February 1993 rating decision is neither cumulative nor redundant of the evidence previously of record, and raises a reasonable possibility of substantiating the service connection claim for an acquired psychiatric disorder. 

3. Bilateral pes planus was incurred in active service. 


CONCLUSIONS OF LAW

1. The February 1993 rating decision, which denied service connection for an acquired psychiatric disorder, is final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. § 20.1103 (2013).

2. New and material evidence has been submitted to reopen the service connection claim for an acquired psychiatric disorder. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2013).

3. Service connection for pes planus is established. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Petition to Reopen

The Veteran petitions to reopen the previously denied claim of entitlement to service connection for an acquired psychiatric disorder. For the following reasons, the Board finds that reopening is warranted. See Jackson v. Principi, 265 F. 3d 1366 (Fed. Cir. 2001) (holding that the Board must determine independently whether new and material evidence has been presented to reopen the claim as a jurisdictional matter, irrespective of the decision of the RO). 

Service connection for a "nervous condition" claimed as severe stress and memory loss was denied in a February 1993 rating decision. The Veteran was notified of this decision and his appellate rights in a March 1993 letter in accordance with 38 C.F.R. § 19.25 (2013). He did not submit a notice of disagreement (NOD). See 38 C.F.R. §§ 20.200, 20.201, 20.302 (2013) (setting forth requirements and timeframe for initiating an appeal). Moreover, new and material evidence was not submitted within one year of the February 1993 rating decision. See 38 C.F.R. § 3.156(b) (providing that if new and material evidence is received within one year after the date of mailing of an RO decision, it may be "considered as having been filed in connection with the claim which was pending at the beginning of the appeal period," and thus prevents an initial determination from becoming final); Young v. Shinseki, 22 Vet. App. 461, 466 (2009) (holding that new and material evidence received within one year of an RO decision prevents that decision from becoming final).

Consequently, because the Veteran did not appeal the February 1993 rating decision, and because new and material evidence was not received within one year of the date of its mailing, the February 1993 rating decision is final. See 38 U.S.C.A. § 7105(c); 38 C.F.R. § 20.1103. 

Under 38 U.S.C.A. § 5108, VA may reopen a previously and finally disallowed claim when "new and material" evidence is presented or secured with respect to that claim. This requires a review of all evidence submitted by or on behalf of a claimant since the last final denial-regardless of whether the denial was on the merits or on procedural grounds-to determine whether a claim may be reopened. See Evans v. Brown, 9 Vet. App. 273, 282-3 (1996).

VA regulation defines "new and material evidence" as follows. "New evidence" means evidence not previously submitted to agency decision makers, and "material evidence" means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. 38 C.F.R. § 3.156(a). In order to warrant reopening, the new evidence must neither be cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. Id.; see Shade v. Shinseki, 24 Vet. App. 110, 117 (2010) (holding that there is a "low threshold" for reopening). 

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence is to be presumed, unless it is inherently false or untrue or, if it is in the nature of a statement or other assertion, it is beyond the competence of the person making the assertion. Duran v. Brown, 7 Vet. App. 216, 220 (1994); Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

Service connection for a psychiatric disorder was denied in the February 1993 rating decision because the RO found that a current diagnosis was not established. At that time, the evidence of record, including a July 1992 VA psychiatric examination report, did not show a diagnosis of a psychiatric disorder. 

Since the February 1993 rating decision was issued, VA treatment records dated in 1997 have been added to the file which reflect diagnoses of a psychiatric disorder, including a June 1997 VA treatment record showing a diagnosis of a neurotic condition with underlying depression and anxiety. Moreover, during the pendency of this claim, a May 2003 VA examination report reflects an Axis I diagnosis of an "anxiety state not otherwise specified." The VA treatment records and examination report are new to the file, and relate to an unestablished fact necessary to support the claim, namely the current disability element of service connection. See Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004) (holding that an element of service connection is evidence of a current disability). As the Veteran has reported experiencing stress and memory loss during active service, there is at least an indication that an anxiety disorder diagnosed during the pendency of this claim may be related to the symptoms he experienced in active service. Thus, the anxiety diagnosis raises a reasonable possibility of substantiating the claim. See Shade, 24 Vet. App. at 117 (holding that if the new evidence would trigger the duty to provide a VA examination or opinion were the claim considered on the merits, then it raises a reasonable possibility of substantiating the claim); see also McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006) (holding, in pertinent part, that a VA examination or opinion must be provided when there is at least an indication that a current disability may be related to service). 

Accordingly, new and material evidence has been associated with the file, and the petition to reopen is granted. See 38 C.F.R. § 3.156(a); Shade, 24 Vet. App. at 117-21. 

II. Service Connection

Service connection means that a veteran has a current disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge when the evidence shows that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Entitlement to service connection is established when the following elements are satisfied: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or "medical nexus" between the current disability and the disease or injury incurred or aggravated during service. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004)); see 38 C.F.R. § 3.303(a). 

The Board has reviewed the evidence in the claims file, and has an obligation to provide an adequate statement of reasons or bases supporting its decision. See 38 U.S.C.A. § 7104(d)(1) (West 2002); Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). The Board must assess the credibility and weight of the evidence, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence on any issue material to the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. When the evidence supports the claim or is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). If the preponderance of the evidence weighs against the claim, it must be denied. See id.; Alemany v. Brown, 9 Vet. App. 518, 519 (1996). 

The balance of the evidence supports a relationship between the Veteran's bilateral pes planus, which was diagnosed in a July 2004 VA examination report, and his career in active service. Preliminarily, because his pes planus, or flat feet, was not diagnosed until around 1998, the Board assumes that it is acquired rather than congenital. See 38 C.F.R. § 4.57 (2013) (providing that it is essential to make an initial distinction between bilateral flatfoot as a congenital or as an acquired condition). 

The service treatment records reflect notations that the Veteran's left middle toe was swollen due to the shoes he was wearing, and another entry states that his right foot was bothering him due to athlete's foot, but do not otherwise reflect complaints or findings concerning the feet. The February 1992 separation examination report indicates that the Veteran's feet were clinically evaluated as normal. Moreover, the Veteran denied foot trouble in the report of medical history. Nevertheless, as noted in a February 2010 VA examination report, a November 1993 VA X-ray study showed mild degenerative changes in the big toes of both feet. The examiner concluded that it was reasonable to infer that the degeneration occurred within one year of active service. Based on this finding, service connection for degenerative arthritis of the toes has been established. The examiner however found against a relationship between the Veteran's pes planus and the entries regarding the swollen toe and athlete's foot, as they had "nothing to do with pes planus." 

Notwithstanding the examiner's conclusion regarding pes planus, the fact that he found that the Veteran's arthritis of the big toes manifested within one year of service separation suggests that the Veteran may have had other pathology of the feet during or shortly after service. In this regard, according to a May 2003 VA general examination report, the Veteran stated that he began having foot symptoms in the late 1980's, and thus during service. A January 1998 VA treatment record reflects that the Veteran had a history of waking up with his feet feeling tender and stiff that had been present more than four years, although previous treatment records make no mention of foot pain. As the Veteran retired from active service in May 1992, this record further supports a finding that his foot symptoms may have been present in active service, and also indicates that the Veteran would not necessarily have mentioned them at the time, given that he had no reason to misrepresent the history he provided in the January 1998 VA treatment record of long-standing foot pain. This record thus constitutes credible evidence that the Veteran had foot pain for several years, and that the lack of mention of foot pain in previous treatment records does not necessarily show an absence of foot pain prior to that time.

Moreover, treatment records from a military hospital include a March 1998 entry stating that he experienced foot pain the first thing in the morning, and it was noted in this regard that he had been standing on concrete for thirty years in connection with his work. Most of that time, of course, would have been during the Veteran's military career. He reported experiencing heel pain off and on for the past few years. The podiatrist diagnosed pes planus. This record suggests that the Veteran's foot pathology was potentially related to many years of standing and working on concrete during his military career. The fact that the Veteran's symptoms were intermittent and occurred mostly in the morning also suggests that they progressively worsened over time, such that the Veteran may not have found them sufficient to report during service or at retirement. Indeed, as discussed in the preceding paragraph, there is objective evidence of arthritis of the big toes shortly after one year from the date of retirement, which the VA examiner found was likely present within one year of service separation, and yet the Veteran did not report symptoms at the time and no findings of pathology of the feet were recorded in the retirement examination. A similar history could very well obtain with respect to the pes planus. 

In light of the above evidence, the mere absence of report or notation of foot problems at retirement does not outweigh the probative evidence supporting a relationship to service.

Accordingly, resolving reasonable doubt in favor of the claim, service connection for bilateral pes planus is established. See Shedden, 381 F.3d at 1166-67; 38 C.F.R. § 3.303(a); see also 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 55.


ORDER

New and material evidence has been submitted to reopen the service connection claim for an acquired psychiatric disorder; the appeal is granted to this extent only. 

Service connection for bilateral pes planus is granted. 


REMAND

While the Board sincerely regrets the delay, the reopened service connection claim for an acquired psychiatric disorder, and the claims for increased ratings for the bilateral wrists, thumbs, and great toes, must be remanded for further development to make an informed decision, and to afford them every due consideration.

Concerning the service connection claim for a psychiatric disorder, a November 2012 VA psychiatric examination report is not sufficient to make an informed decision on the claim, as the examiner's opinion was premised on a finding that the Veteran did not present with a psychiatric disorder at the time of the examination, and that a psychiatric disorder was not diagnosed in a June 2004 VA examination report. The examiner also observed that the fact the Veteran did not seek treatment for psychiatric symptoms further indicated that he did not have a psychiatric disorder. However, an Axis I diagnosis of an "anxiety state not otherwise specified" was provided in a May 2003 VA examination report during the pendency of this claim. When a current disability is established during the pendency of the claim, the first service connection element is satisfied irrespective of whether the diagnosed disorder subsequently resolves. McLain v. Nicholson, 21 Vet. App. 319, 321 (2007). Accordingly, an opinion is still required as to whether the anxiety diagnosed in May 2003 is related to the Veteran's in-service symptoms. If the examiner finds that the May 2003 diagnosis of an "anxiety state" did not establish a psychiatric disorder at that time, this must be fully explained. 

With regard to the increased rating claims for DJD of the bilateral wrists, a letter notifying the Veteran of the requirements for substantiating the claims and the allocation of responsibilities for obtaining relevant evidence to support them must be sent to the Veteran under the Veterans Claims Assistance Act of 2000 (VCAA). See 38 C.F.R. § 5103(a); 38 C.F.R. § 3.159(b) (2013). No such letter has been sent. 

As the evaluation of the Veteran's bilateral toe and thumb DJD may be affected by the evaluation of the bilateral wrist disorders, as well as the initial rating of the newly service-connected pes planus, the Board will defer consideration of this issue. See Harris v. Derwinski, 1 Vet. App 180, 183 (1991) (two issues are "inextricably intertwined" when a decision on one issue would have a "significant impact" on the resolution of the second issue).

On remand, the Veteran's outstanding VA treatment records from the Omaha VA Medical Center (VAMC) dating from February 2012 forward must be associated with the claims file. 

Accordingly, the case is REMANDED for the following action:

1. Add the Veteran's outstanding VA treatment records from the Omaha VAMC dated since February 2012 to the claims file (preferably the Virtual File). 

2. Send the Veteran a VCAA notification letter addressing the increased rating claims for DJD of the bilateral wrists. The letter must notify the Veteran of what is required to substantiate the claims, and the allocation of responsibilities between himself and VA for obtaining relevant evidence on his behalf, in accordance with current, controlling legal guidance. 

3. Thereafter, return the claims file to the November 2012 VA examiner for a supplemental opinion concerning the service connection claim for a psychiatric disorder. If that examiner is not available, a different physician may render the opinion. 

The examiner must address the May 2003 VA examination report rendering an Axis I diagnosis of an "anxiety state not otherwise specified." The examiner must provide an opinion as to whether it is at least as likely as not (i.e. a 50:50 degree of probability or greater), or unlikely (less than a 50:50 degree of probability) that the Veteran's anxiety diagnosed at that time is related to his reported in-service symptoms of work-related stress, memory loss, and difficulty "expressing thoughts in an organized manner," as reported in his June 1992 claim. 

Although the November 2012 VA examination report states that the Veteran did not present with a psychiatric disorder at the time, the May 2003 VA examination report constitutes evidence of a psychiatric disorder during the pendency of this claim, and takes on further significance in light of VA treatment records dated in 1997 reflecting diagnoses of a neurosis with depression and anxiety. If the examiner finds that the May 2003 diagnosis of an "anxiety state" did not establish a psychiatric disorder at the time, this must be fully explained. 

A complete explanation must be provided in support of the opinion. 

4. Perform any additional development deemed necessary - including additional VA examinations of the wrists, toes, and thumbs - if warranted.

5. Next, review the claims file and ensure that all requested development actions have been completed in full. If any VA examination report does not adequately respond to the above remand directives, it must be returned to the examiner for corrective action.

6. Finally, readjudicate the claims on the merits. If the benefits sought are not granted, the Veteran and his representative must be furnished a supplemental statement of the case (SSOC) and afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).


______________________________________________
P. M. DILORENZO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs