Thomas R. DONOVAN, Appellant,

v.

Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.

No. 96–196.

United States Court of Veterans Appeals.

Sept. 29, 1997.

Thomas R. Donovan, pro se.

Mary Lou Keener, General Counsel, Ron Garvin, Assistant General Counsel, R. Randall Campbell, Deputy Assistant General Counsel and Peter M. Donawick, Washington, DC, were on the brief, for appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

IVERS, Judge, filed the opinion of the Court. STEINBERG, Judge, filed a dissenting opinion.

IVERS, Judge:

The appellant, a World War II veteran, appeals from a December 12, 1995, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for clear and unmistakable error (CUE) in an August 4, 1947, regional office (RO) decision denying service connection for psychoneurosis. For the rea-

sons stated below the Court will affirm the BVA's December 12, 1995, decision.

## I. FACTS

The veteran served on active duty from April 1941 to November 1945, including combat in Europe during which he was awarded the Purple Heart. Record (R.) at 27, 29–30. An October 1945 VA examination was devoid of any complaints of psychological problems. R. at 20–21.

In October 1946 the appellant filed a claim for headaches, a stomach condition, and a nervous condition. R. at 43. In support of his claims he submitted a statement which explained that he had started to experience symptoms related to these ailments while "on maneuvers at the Mohavie [sic] Desert, Calif. about February 1942." R. at 47. In addition, a statement was submitted by his private physician reporting that the appellant suffered from migraines. R. at 50. Also submitted were two statements by men who had served with the appellant and who revealed that the appellant had suffered stomach problems during service. R. at 53–54. A July 1947 VA examination diagnosed gastric neurosis and psychoneurosis secondary to gastrointestinal disturbance. R. at 57–65. In an August 1947 RO decision the appellant was denied service connection for gastric neurosis and psychoneurosis. R. at 68. The appellant did not appeal this decision.

In September 1985 the appellant submitted a claim for service connection for "[d]elayed [PTSD]." R. at 122. In December 1985 the appellant underwent a VA examination with two psychiatrists to determine whether he suffered from PTSD. The impression was:

No Diagnosis on Axis I—Currently, this veteran's chief complaint is irritability and although he stated that he did come in seeking compensation for [PTSD], he appeared to be quite unclear as to what this meant. He actually does deny most significant psychiatric difficulties. Although he certainly has a stressor due to his four years in the service, I cannot see that he meets the criteria for [PTSD] or indeed any other major Axis I disorder. He does

appear to have significant frustration related to his long history of tinnitus.

R. at 132.

In February 1986 the appellant underwent a VA social and industrial survey. The social worker opined that there were no "industrial related problems." He stated, "I do not see any severe symptomatology, but rather mild forms of withdrawal, anger, agitation, frustration over his hearing problems, and some moodiness which may be looked upon as depression." He concluded, "His major problems continue to be his hearing deficit and his recurring headaches." R. at 128. In an April 1986 rating decision, the RO denied service connection for PTSD. R. at 136–37.

The appellant filed a Notice of Disagreement (NOD). R. at 145. A Statement of the Case (SOC) was issued. R. at 148–51. The appellant submitted VA Form 1–9, Appeal to the Board of Veterans' Appeals (Form 1–9). R. at 153.

On January 8, 1987, the appellant testified at a hearing that he was not presently receiving psychiatric treatment nor had he received psychiatric treatment in the past 10 years. R. at 159. He revealed that he "periodically" had nightmares of tanks being hit and his buddies being killed. R. at 160.

In February 1987 the appellant underwent a VA examination which determined that there "appears to be no major psychiatric diagnosis on Axis I." R. at 176. In a June 1987 rating decision service connection for PTSD was denied. R. at 180–81. A Supplemental SOC (SSOC) was issued. R. at 183–86. In May 1988 the BVA denied the appellant's claim for service connection for an acquired psychiatric disability, to include PTSD. R. at 195–200. The Board "reviewed the entire evidence of record and [made] a de novo determination." R. at 196.

In April 1991 the appellant requested that the RO reopen his claim for service connection for PTSD. His representative noted that the appellant had filed a claim for a nervous condition within one year of discharge. He contended that the failure to award service connection in August 1947 for psychoneurosis was CUE. R. at 202.

In May 1991 the RO denied the appellant's request to reopen his claim. R. at 204, 212. The appellant filed an NOD. R. at 214. An SOC was issued. R. at 217–21. The appellant submitted Form 1–9. R. at 223.

In April 1992 the appellant testified that the August 1947 rating decision contained CUE. R. at 228. He stated that he was not currently receiving any psychiatric treatment and that he had worked for 49 years at the same job. R. at 229–30.

In May 1992 the appellant underwent a VA psychiatric examination and was diagnosed with PTSD. The examiner explained:

Mr. Donovan meets the criteria for PTSD. It is likely that Mr. Donovan did not fully disclose the extent of his symptomatology previously because of a tendency to minimize his symptoms. This appears to be one of his methods of coping with the psychological distress that he experiences. His symptoms cause him significant interpersonal difficulty as well as considerable psychological distress.

R. at 248.

In April 1993 the hearing officer rendered his decision finding no CUE in the prior denial of service connection for an acquired psychiatric disorder to include PTSD. It was also noted that a review of the file showed that psychiatric examinations in 1985 and 1987 showed no psychiatric diagnoses. R. at 254. An SSOC was issued. R. at 257–60.

In June 1993 the appellant underwent a VA examination and was diagnosed with PTSD. R. at 268–70. In July 1993 the RO reopened the appellant's claim and granted service connection for PTSD, rated 10% disabling and effective November 5, 1991. R. at 272–73. The appellant argued that the effective date should have been August 1947, the date that the appellant was diagnosed with psychoneurosis. R. at 275.

In October 1993 the RO denied the appellant's claim for an earlier effective date. R. at 278–80. The appellant filed an NOD. R. at 282.

On December 12, 1995, the BVA rendered the decision currently on appeal. The Board determined that the August 1947 RO decision could not be collaterally attacked on the basis

of CUE and that an effective date of May 1, 1991, for service connection for PTSD was warranted. R. at 8.

## II. ANALYSIS

■ Section 3.105(a) of title 38, Code of Federal Regulations, provides:

Previous determinations which are final and binding, including decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, line of duty, and other issues, will be accepted as correct in the absence of [CUE]. Where evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a) (1996). A claim of CUE is a collateral attack on a final RO decision. *Smith v. Brown,* 35 F.3d 1516, 1521 (Fed.Cir. 1994); *Eddy v. Brown,* 9 Vet.App. 52, 57 (1996); *Crippen v. Brown,* 9 Vet.App. 412, 417–18 (1996); *Duran v. Brown,* 7 Vet.App. 216, 224 (1994). The CUE review authority in 38 C.F.R. § 3.105(a) relates only to review of decisions of the agency of original jurisdiction (RO) and not to those of the BVA. *See Smith,* 35 F.3d. at 1527. The Court has defined CUE as follows:

Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE] is the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed.

*Crippen,* 9 Vet.App. at 418; *Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc). In *Duran,* the Court stated, "After *Smith,* an appellant may still assert a claim of CUE under 38 C.F.R. [§] 3.105(a) of a 'prior, unappealed AOJ [agency of original jurisdiction] decision.'" *Duran,* 7 Vet.App. at 224 (quoting *Smith, supra*). The Court continued,

"where an AOJ decision was appealed to and affirmed by the Board and thus subsumed by the Board's decision, no claim of 'clear and unmistakable error' under 38 C.F.R. § 3.105(a) exists as a matter of law with respect to that AOJ decision." *Ibid.; Smith,* 35 F.3d at 1527; *see also Talbert v. Brown,* 7 Vet.App. 352, 355–56 (1995); 38 C.F.R. § 20.1104 (1996) ("When a determination of the [AOJ] is affirmed by the [BVA], such determination is subsumed by the final appellate decision."); 38 U.S.C. § 7104(a).

The appellant argues CUE in the August 1947 rating decision which denied service connection for gastric neurosis and secondary psychoneurosis as not incurred in or aggravated by service. R. at 68. The appellant did not appeal that decision. In the May 1988 BVA decision, the Board noted that a rating action in August 1947 had denied service connection for gastric neurosis and a secondary psychoneurosis. The Board recounted that, in 1985, the appellant's claim was reopened and "was expanded to include consideration of entitlement to service connection for [PTSD]." The Board then reviewed the entire evidence of record and made a de novo determination. R. at 196. In the BVA's evaluation of the evidence of record, including the July 1947 examination, the Board found that "the evidence since his discharge from service does not demonstrate that he has a psychiatric disorder, including [PTSD], as a result of that service." R. at 199.

■ The Secretary refers to VA General Counsel Precedent Opinion 14–95 (May 12, 1995) [hereinafter G.C. Prec. 14–95] in support of the proposition that the reasoning and result in *Smith, supra* can also be applied to a situation where a final unappealed rating decision is subsequently reopened and adjudicated on the merits by the BVA. Secretary's Brief (Br.) at 10. The opinion held:

A claim of [CUE] under 38 C.F.R. § 3.105(a) concerning a final, unappealed [RO] decision may not be considered where the [BVA] has reviewed the entire record of the claim following subsequent reopening and has denied the benefits pre-

vi-ously [sic] denied in the unappealed decision.

G.C. Prec. 14–95 at 6.

Once the BVA has decided a claim, the Board's decision is final and binding upon VA. *See* 38 U.S.C. §§ 7103(a) [sic]. When a claim is disallowed by the BVA, the claim may not thereafter be reopened and allowed, except upon receipt of new and material evidence, and a claim based on the same factual basis may not be considered. 38 U.S.C. § 7104(b). Exceptions to the finality of BVA decisions are very limited. The Chairman of the Board may order reconsideration under 38 U.S.C. § 7103(a), the Board on its own motion may correct an obvious error in the record under 38 U.S.C. § 7103(c), or, under 38 U.S.C. §§ 5108 and 7104(b), a previously-denied claim may be reopened upon submission or procurement of new and material evidence. Permitting review for CUE of a prior, unappealed [RO] decision, where the BVA has reviewed the matter upon reopening, would, as discussed below, tend to undermine the finality of BVA decisions established by the referenced statutes.

G.C. Prec. 14–95 at 3–4. After discussing what constituted new and material evidence to reopen a claim the opinion continued,

Where a BVA decision involves review of evidence considered in a prior, unappealed [RO] decision con-cerning [sic] the same issues, consideration of a CUE claim regarding the prior [RO] decision would essentially permit review of an issue finally decided by the Board, in a manner not contemplated in the statutes governing finality of Board decisions. Such action would essentially allow a[n RO] to collaterally consider and overturn conclusions reached by the Board concerning the issues raised. This would give rise to the anomalous situation referred to by the Federal Circuit in *Smith* [35 F.3d at 1526] of an inferior tribunal reviewing the decisions of a superior one.

Further, such review would tend to conflict with 38 U.S.C. § 7104(b), in that it could be viewed as involving consideration and potential allowance of a claim on the same factual basis as a claim already denied by the Board. In considering the reopened claim, the Board would have had before it the same evidence considered by the [RO], together with whatever new evidence had been presented or developed in connection with reopening of the claim. While the factual basis considered by the Board would have been expanded and thus not have been identical to that previously considered by the [RO], the evidence subsequently considered by the [RO] upon review of allegations of CUE in the prior decision would be identical to evidence previously before the Board upon its review of the reopened claim. Thus, the claim of CUE would lack the new factual basis necessary to overcome the finality of the Board decision.

G.C. Prec. 14–95 at 4–5. The Board, by statute, is required to follow the precedential opinions of VA General Counsel; however, the Court is not. *See* 38 U.S.C. §§ 7261, 7104(c); *see also Sabonis v. Brown,* 6 Vet. App. 426, 429 (1994).

The Secretary asserts that because the conclusion reached by G.C. Prec. 14–95 is consistent with the plain meaning and application that the Federal Circuit established in *Smith* for 38 C.F.R. § 3.105(a), this Court should extend that holding to circumstances where a final unappealed rating decision is subsequently reopened and adjudicated on the merits by the BVA. Secretary's Br. at 12–13. In the alternative, the Secretary maintains that if the Court is unwilling to extend the *Smith* holding to situations similar to this case, the Court should "exercise due deference" to G.C. Prec. 14–95. *Id.* at 13; *see Smith,* 35 F.3d at 1527.

 We agree that G.C. Prec. 14–95 is consistent with the *Smith* decision as applied to the facts here. In this regard, the Court notes that the 1988 BVA decision made a de novo review and essentially reviewed the 1947 RO decision. Therefore, the Court finds that the 1947 RO decision was subsumed by the 1988 BVA decision and that the BVA was correct in denying the appellant's claim for CUE as no CUE existed as a matter of law. *See Sabonis,* 6 Vet.App. at 430 ("[W]here the law and not the evidence is

dispositive, the claim should be denied or the appeal to the BVA terminated because of the absence of legal merit or the lack of entitlement under the law."). As the Federal Circuit said in *Smith* and as set forth in the G.C. Prec. 14–95 opinion, an RO must not be placed in the anomalous position of reviewing the decision of the BVA, a superior tribunal. Even assuming that a CUE claim is not precluded by *Smith, supra,* on the theory that the 1988 BVA decision did not limit its review to only the evidence before the RO in 1947, a determination by the Court of the existence of CUE since 1947 would of necessity mandate service connection to the present time. Such a determination would, in effect, overturn the 1988 BVA decision. The Court, however, is precluded from reviewing a BVA decision that is not the subject of this appeal. *See* 38 U.S.C. §§ 7252(a), 7266(a)(1).

## III. CONCLUSION

For the reasons stated above, the BVA's December 12, 1995, decision is AFFIRMED.

STEINBERG, Judge, dissenting:

I would reverse the Board of Veterans' Appeals (BVA or Board) decision and remand the claim of clear and unmistakable error (CUE) for Board adjudication.

By its action today, the Court effectively grants a license to the BVA that permits it, by merely stating that it has reviewed all the evidence of record and decided a claim de novo, to immunize from review for CUE a prior final Department of Veterans Affairs (VA) regional office (RO) decision *never appealed to the Board.* In practical terms, the Court's decision obviates a claimant's rights to the following as to such a claim: To file a claim as to a particular issue (here a CUE claim); to receive a decision on that issue; to identify an issue for appeal and express disagreement; to receive a Statement of the Case; to perfect the appeal and submit argument on behalf of a position; and to receive a hearing.[1] It also effectively eliminates the right to judicial review of whether a Board

denial of a CUE claim on the merits is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, a right embedded in our case law since 1992. *See Russell v. Principi,* 3 Vet.App. 310, 315 (1992) (en banc).

This abrogation of claimant rights is unwarranted as a matter of statutory and regulatory analysis and is inconsistent with Court precedent that has resisted prior attempts by the Secretary to thwart rights to judicial review.

### A. The Secretary's Flawed Position

As a general matter, I reject the position proposed by the Secretary and VA General Counsel's Precedential Opinion 14–95 (May 12, 1995) [hereinafter G.C. Prec. 14–95] on the basis of *Smith (William) v. Brown,* 35 F.3d 1516 (Fed.Cir.1994), that, as a matter of law, all merits decisions of the Board on a claim to reopen subsume prior otherwise final (unappealed) decisions of a VARO on the same claim. Moreover, although the Court purports to be limiting its holding regarding "delayed subsuming" under G.C. Prec. 14–95 "to the facts here", *ante* at 408, I believe that the instant facts are such that whatever viability the Secretary's position has it should not be applied to this case. As to this case, the Secretary's brief relies upon the fact that the 1988 BVA decision reviewed the evidence "de novo", apparently found new and material evidence under step two of *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991), and then reopened the prior denial of the claim and went on to consider all the evidence of record. *See* Brief at 12. The G.C. Prec. 14–95 suggests that such a BVA review would always expose any CUE in the prior RO decision and therefore must be considered to have subsumed that prior decision. As demonstrated below, that position is demonstrably incorrect on the facts of this very case.

*1. As Applied to Evidence in this Case:* Here, even though the 1988 BVA decision considered all the same evidence as did the 1947 RO decision, it *also* considered *new*

---

1. *See* 38 U.S.C. § 7105(a), (d); 38 C.F.R. §§ 3.103, 19.29, 20.201, 20.202, 20.700 (1996); *Austin v. Brown,* 6 Vet.App. 547, 551–52 (1994); *Thurber v. Brown,* 5 Vet.App. 119, 122–23 (1993);

*Hamilton v. Brown,* 4 Vet.App. 528, 544 (1993) (en banc), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994); *Bernard v. Brown,* 4 Vet.App. 384, 390–91 (1993).

*negative evidence.* There is absolutely no connection between there having been CUE in the 1947 RO decision and the 1988 BVA decision's having correctly denied service connection because negative evidence newly obtained by that later time precluded an award of service connection. The 1988 BVA decision thus has no bearing upon whether the RO committed CUE in 1947, a determination that we have said time and again is to be "based on the record and the law that existed at the time of the prior ... decision." *Crippen v. Brown,* 9 Vet.App. 412, 418 (1996) (quoting *Russell,* 3 Vet.App. at 314). An adjudication by an RO currently of a claim of CUE in the 1947 RO decision could not and would not produce the kind of collateral attack on the 1988 BVA decision about which the Federal Circuit expressed concern in *Smith*[2], because in that 1988 BVA decision the Board concluded only that, based upon the evidence *in 1988,* the veteran was not entitled to service connection *in 1988.* Hence, any RO now adjudicating CUE could not consider the evidence newly presented in 1988 and would be concerned only with the veteran's entitlement *in 1947* on the record then before the RO.

More particularly, the 1988 BVA decision expressly took into account December 1985 and February 1987 VA medical examinations that found no psychiatric disability (Record (R.) at 131–33, 175–76), as well as a February 1986 social and industrial survey (R. at 125–28). In contrast, the 1947 RO decision had before it only the VA diagnosis of psychoneurosis within one year after service (*see* R. at 68)—which was the only medical evidence in the case at that time as to the appearance of a psychiatric disability within the one-year presumption period.[3] The RO in its 1947 decision could have committed CUE by deny-

ing service connection if all the evidence were favorable as to the occurrence of a compensable psychiatric disability within an applicable presumption period; in any event, that is the CUE claim that the Board in December 1995 refused to adjudicate and that the Board should be ordered to adjudicate on remand, in my view. *See Russell,* 3 Vet.App. at 320 (CUE issue properly raised to but not adjudicated by BVA remanded for adjudication by BVA). Hence, on the facts of this case, the 1988 BVA decision cannot properly be considered to have subsumed the 1947 RO decision.

*2. Effective–Date Consideration:* Quite independent of the evidentiary issues discussed above, which I think are themselves sufficient for rejecting the Secretary's position as applied to *this* case, there is also an effective-date issue that demonstrates that the 1988 BVA decision did not subsume the 1947 RO decision. Absent a finding of CUE, the 1988 BVA decision on the claim to reopen could have awarded service connection only from the September 1985 date of that claim to reopen (which the BVA disallowed). *See* 38 U.S.C. § 5110(a) (effective date of award based on claim to reopen "shall not be earlier than the date of receipt of application therefor"). This would thus have left completely unaddressed the issue of the appellant's entitlement to service connection for the years between the filing of his original claim in October 1946 and his 1985 attempt to reopen, and that is the essence of the appellant's current CUE claim that the Board refused to address in its December 1995 decision here on appeal. To put it in regulatory terms, the earlier RO decision is not subsumed in the later BVA decision on the attempt to reopen because the earlier RO decision is still "final and binding" under 38 C.F.R. § 3.105(a)

---

2. "[I]n the administrative structure Congress has created, the Board [of Veterans' Appeals (Board or BVA)] is an appellate authority, and the [agencies of original jurisdiction] AOJs are trial-level adjudicators. This ... tends to preclude the inference that the drafters of § 3.105(a) intended [clear and unmistakable error] CUE review to apply to both Board and AOJ decisions, since it would, oddly, permit an inferior to collaterally review the actions of a superior". *Smith (William) v. Brown,* 35 F.3d 1516, 1526 (Fed.Cir. 1994).

3. Service connection for Department of Veterans Affairs (VA) disability compensation purposes will be awarded to a veteran who served on active duty during a period of war, or during a post–1946 peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases that were initially manifested, generally to a degree of 10% or more, within a specified presumption period after separation from service. *See* 38 U.S.C. §§ 1110, 1112(a), 1116, 1131, 1133(a), 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307 (1996).

(1996) *on the question of entitlement between 1946 and 1985.* A CUE claim as to the 1947 RO decision could not be a collateral attack on the 1988 BVA decision because that decision did not and could not adjudicate entitlement for the years 1946 to 1985.

**3. Regulatory Analysis:** Moving to the regulation relied upon by the majority for its decision, 38 C.F.R. § 20.1104 (1996), *ante* at 407, I am mystified as to how a 1985 RO or 1988 BVA decision can be said to have "affirmed" an unappealed 1947 RO decision within the meaning of that regulation.[4] It is undisputed that when the appellant did not file an NOD as to the 1947 RO decision or perfect an appeal to the Board, that decision became final.[5] When the RO in April 1986 denied service connection on the claim to reopen, the issue before it was *service connection in 1985* and, absent CUE, there was no way for it to affirm, reverse, or otherwise affect the 1947 RO decision in any manner because the RO certainly had no jurisdiction over that final, unappealed decision.[6] The 1988 BVA decision could not have subsumed what it had no jurisdiction over. In fact, the "plain meaning" of § 20.1104's language "affirmed ... by the final appellate determination" is that the decision to be subsumed had to be on direct appeal to the Board. For example, an appellate court "reverses" a decision directly on appeal to it, as I would do in this case, but it "overrules" prior adverse

authority that was not appealed.[7] It seems axiomatic that because the 1947 RO decision was not on appeal that final decision could not have been affirmed or, therefore, subsumed by a BVA decision 41 years later.

**4. Majority's Alternative Theory:** As to the alternative theory put forth by the majority in the last two sentences of its part II—that the granting of the CUE claim and award of service connection as of 1947 would "of necessity mandate service connection to the present time" and "would, in effect, overturn the 1988 BVA decision", *ante* at 409, that presents a problem of sorts but not an insurmountable one. The Federal Circuit's *Smith* opinion prohibits collateral review by an RO of a BVA decision. Review of the 1947 RO decision, if that decision is not found to be subsumed in the 1988 BVA decision, cannot be collateral review of a BVA decision; the 1988 BVA decision never considered the error that is now up for consideration because, as noted in part A.3., above, that RO decision became final when it was not appealed within a year. A successful CUE challenge to the 1947 RO decision would theoretically create a problem as to the denial of service connection by the 1988 BVA decision because a 1947 grant of service connection could be discontinued only by a decision that would accord with 38 C.F.R. § 3.105(d), and the 1988 BVA decision did not.[8] However, the effect on that BVA deci-

---

4. "When a determination of the [AOJ] is affirmed by the [Board], such determination is subsumed by the final appellate decisions." 38 C.F.R. § 20.1104 (1996).

5. *See* 38 U.S.C. § 7105(b)(1), (c); 38 C.F.R. § 20.302(a), (b) (1996); *see also* 38 C.F.R. § 3.1330 (1938) ("A decision of a rating board unappealed within 1 year shall be final") (this regulation had not been amended as of 1948).

6. *See Hamilton,* 4 Vet.App. at 533 (quoting *Strott v. Derwinski,* 964 F.2d 1124, 1127–28 (Fed.Cir. 1992), which describes process by which veteran can appeal regional office (RO) decision), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994); *Bernard,* 4 Vet. App. at 390–92 (detailing the "series of very specific, sequential, procedural steps that must be carried out" to acquire appellate review); *Grantham v. Brown,* 114 F.3d 1156, 1159 (Fed. Cir.1997) (Archer, Chief Judge, concurring); 38 U.S.C. § 7105; 38 C.F.R. § 20.201 (1996).

7. According to Black's Law Dictionary, a reversal of a judicial decision refers to the "annulling

or setting aside by an appellate court of a decision of a lower court". BLACK'S LAW DICTIONARY 1319 (6th ed.1990) [hereinafter BLACK'S]. However, a "judicial decision is said to be overruled when a later decision, rendered by the same court or by a superior court in the same system, expresses a judgment upon the same question of law directly opposite to that which was before given, thereby depriving the earlier opinion of all authority as precedent". BLACK'S at 1104.

8. 38 C.F.R. § 3.105(d) (1996) provides now, and did in 1988, the method by which service connection can be severed "[s]ubject to the limitations contained in § [ ] 3.957". That subsection, which cites 38 U.S.C. § 1159 for its authority, provides:

Service connection for any disability or death granted or continued under title 38 U.S.C., which has been in effect for 10 or more years will not be severed except upon a showing that the original grant was based on fraud or it is clearly shown from military records that the

sion would not be "collateral" review because, in essence, the RO could find CUE as to service connection in 1947 without in any way addressing the 1988 BVA decision, and that is our only concern at this point.

How long those benefits extend is a matter for another case and is not before us here. It may be true that *Smith* would absolutely preclude that an award of benefits based on CUE in the 1947 RO decision be extended beyond the date of the 1988 BVA decision—no matter how flawed or correct that 1988 BVA decision was in not applying § 3.105(d) when the Board had no way of then knowing that the veteran "was" service connected as a result of CUE in the 1947 RO decision—unless the Board decides to find "obvious error", under 38 U.S.C. § 7103(c),[9] in its 1988 decision. Nevertheless, an award from 1947 to 1985 would not overlap at all with what was before the Board in 1988 and with what was decided in that Board decision, and an RO decision making such a CUE award therefore could not constitute the forbidden collateral review of *that* BVA decision.

### B. Larger Impact: The Right to Judicial Review

Finally, it should be understood that the doctrine of "delayed subsuming" that the Secretary is propounding is a most pernicious one—it would allow the BVA to wipe out any potential CUE claims as to prior unappealed RO decisions on the same issue under review by the BVA by including in its decision, sua sponte, a sentence stating that it had reviewed the claim de novo, including the disposition of the prior RO decision(s). I do not think that is what the Federal Circuit had in mind in its opinion in *Smith*. Rather,

this situation is analogous to the one presented to this Court in another *Smith* case, where the Court ruled that the BVA Chairman could not "defeat the right to judicial review at a critical juncture in a case by ordering reconsideration of a prior [BVA] decision which is beyond the reach of that right." *Smith (George) v. Brown*, 8 Vet.App. 546, 552 (1996) (en banc). Hence, the Court there held that "the appellant's right to judicial review of his claim conferred by his post-VJRA NOD [Notice of Disagreement] [10] and thereafter perfected was not extinguished in this case even though a BVA decision which was based on a pre-VJRA NOD was subsequently vacated and replaced by a BVA reconsideration decision." *Id.* at 553. Similarly, this Court has held that the Board cannot refuse to rule on a claim properly appealed to it and thereby deny to a claimant a BVA decision that can then be appealed to this Court. *See In the Matter of the Fee Agreement of Cox*, 10 Vet.App. 361, 372–73 (1997) [hereinafter *In re Cox*].

On the other side of the coin, in *Hamilton*, the Court noted that "where . . . the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, neither the RO nor BVA has authority to adjudicate those specific claims, absent a subsequent request or authorization from the claimant or his or her representative". *Hamilton v. Brown*, 4 Vet. App. 528, 544 (1993) (en banc), *aff'd*, 39 F.3d 1574 (Fed.Cir.1994). The Court there stressed:

> A contrary result would permit the RO or Board to act in a way that could prejudice a claimant's enjoyment of statutory and regulatory procedural rights (such as a

person concerned did not have the requisite service or character of discharge.
38 C.F.R. § 3.957 (1996); *see* 38 U.S.C. § 1159 (service-connection award in effect for 10 years cannot be severed "except upon a showing that the original grant of service connection was based on fraud or it is clearly shown from military records that the person concerned did not have the requisite service or character of discharge").

9. A BVA decision as to "obvious error" is not a matter that this Court may review. *See Chisem v. Brown*, 4 Vet.App. 169, 177 (1993) (Board has "discretion to *correct* an 'obvious' error, when

one is found" and that discretion is not subject to review in this Court); 38 U.S.C. § 7103(a) (decision of Board is final unless Chairman orders reconsideration), (c) (notwithstanding section 7103(a), Board may correct "obvious error").

10. *See* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) (requiring post-November 17, 1988, NOD as to claim appealed to BVA in order for this Court to have jurisdiction to review BVA decision on that claim); *Grantham* and *Hamilton*, both *supra* note 6.

detailed SOC under section 7105(d)) by deciding a claim on a record that had not been adequately developed. *See, e.g.,* 38 C.F.R. § 3.103 (1992) (right, inter alia, to written notice of an RO decision on the claim, to a hearing, to representation, to produce witnesses and introduce any available evidence any arguments, and to VA assistance); *Bernard* [*v. Brown,* 4 Vet. App. 384, 392–94 (1993) ].

*Ibid.* In *Sutton v. Brown,* 9 Vet.App. 553, 564 (1996) (citing *Bernard,* 4 Vet.App. at 394), the Court stated:

> [W]hen the Board addresses in its decision a question that has not been addressed by the RO, it must consider (1) whether the claimant has been given both adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument and to address that question at a hearing, and (2) whether, if such notice has not been provided, the claimant has been prejudiced thereby.

*See also Curry v. Brown,* 7 Vet.App. 59, 66–67 (1994). As a general matter, *Sutton* and *Bernard,* both *supra,* stand for the proposition that the Board should not consider issues not considered by the RO decision on appeal to it and if the Board does so it should do so only with the full and informed participation of the appellant.

In the instant case, it is clear that the Board's action in 1988, while not before us directly in this appeal, is being transformed by the majority into a CUE review as to that RO decision, one made without the participation of the claimant and without his having been advised of the implication of that action.[11] This is exactly the kind of unilateral Board action that the fair-process rules established in *Bernard* and *Sutton,* both *su-*

*pra,* as well as in *Thurber v. Brown,* 5 Vet. App. 119, 122–23 (1993), and *Austin v. Brown,* 6 Vet.App. 547, 551–52 (1994), were designed to forestall. Yet, the Court today gives to the Board a similar power to insulate VA decisions from judicial review (in a CUE context) by purporting to have reviewed them and to have done so in a way that will not be subject to judicial review because the RO decision in question was not appealed to the Board by a post-November 17, 1988, NOD.[12] The Board (and the majority) have thus stripped from the appellant the right to judicial review that was conferred by his *post*-VJRA NOD as to his CUE claim (R. at 282).

The cases discussed above demonstrate a special concern on this Court's part to guard against unwarranted or unauthorized incursions against judicial review by the Secretary. The only reason for this Court's existence is to bring to an end a long-entrenched rule where the Secretary was a law unto himself, immune from any judicial scrutiny.[13] Just as the Court has refused to permit the Board to act in a way to deny or prejudice judicial review—by, sua sponte or otherwise, reconsidering a prior BVA decision (*see Smith (George), supra*) or by refusing to issue a BVA decision (*see In re Cox, supra*)—or to decide issues not decided by an RO (*see Sutton, Curry,* and *Bernard,* all *supra*), or to decide issues without fair notice and opportunity to respond to Board-acquired evidence (*see Austin* and *Thurber,* both *supra*), so here the Court should not be permitting—in this case or any other—the administrative adjudication of claimant rights without the claimant's full and fair participation (*see Hamilton, supra*) or be facilitating the resulting abrogation of a claimant's right to judicial review.[14] As Circuit Judge

---

**11.** *See Talbert v. Brown,* 7 Vet.App. 352, 355–56 (1995) (Court is without jurisdiction to review CUE claim once adjudicated by the Board and unappealed because that issue is res judicata) (citing *Russell v. Principi,* 3 Vet.App. 310, 315 (1992) (en banc)).

**12.** *See supra* note 10.

**13.** *See* S.Rep. No. 100–418, at 30–31 (1988) ("This legislation [VJRA] is designed to ensure that all veterans are served with compassion, fairness,

and efficiency, and that each individual veteran receives from [ ] VA every benefit and service to which he or she is entitled under law"); 134 Cong. Rec. 31454, 31465 (1988) (statement of Sen. Cranston) ("One of the principal reasons judicial review is needed is to help ensure fairness to individual claimants before [ ] VA").

**14.** A case such as this may demand a legislative resolution in order to ensure the participatory and fair adjudicative process within VA as well as the availability of judicial review that Con-

Plager recently wrote: "[W]hen construing ambiguities [in the VJRA, we] should err, if we err at all, on the side of protecting a veteran's right to the judicial review Congress has mandated". *Barrera v. Gober*, 122 F.3d 1030, 1040 (Fed.Cir.1997) (Plager, J., concurring).

gress intended, just as may the situation where the Board, sua sponte, adjudicates a CUE claim without notice to an appellant and thereby denies that appellant an opportunity to bring an appeal to the Court of such an adverse BVA decision because there would be no jurisdiction-conferring NOD, the RO not having addressed CUE. *See Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995) (where veteran filed NOD but RO never issued Statement of the Case to enable veteran to perfect appeal to Board, Board erred in treating RO decision as final); *Grantham*, 114 F.3d at 1158–59 (NOD cannot place in appellate status issue that could not have been decided by RO); *Barrera v. Gober*, 122 F.3d 1030, 1032 (Fed.Cir. 1997) ("court recently held in [*Grantham* ] that a veteran's overall claim, or case, for benefits is comprised of separate issues, and that the Court of Veterans Appeals has jurisdiction to consider an appeal concerning one or more of those issues, provided a[n] NOD has been filed after the effective date of the [VJRA] with regard to the particular issue"). *But cf. United States v. Corrick*, 298 U.S. 435, 440, 56 S.Ct. 829, 832, 80 L.Ed. 1263 (1936) ("[w]hile the District Court lacked jurisdiction[,] we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit"); *In the Matter of the Fee Agreement of Hugh D. Cox*, 10 Vet.App. 361, 371 (1997) ("if the Court's granting of the petitioner's petition would lead to a BVA decision over which the Court would have jurisdiction, the Court would possess jurisdiction to issue a writ of mandamus; VA cannot frustrate this Court's statutory appellate jurisdiction by refusing to issue an otherwise required decision that the Court could directly review").