**William R. MOORE, Appellant,**

**v.**

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 97–1117.**

United States Court of Appeals for Veterans Claims.

Sept. 30, 1999.

Clayte Binion was on the briefs for the appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel;

**70**

Mary Ann Flynn, Acting Deputy Assistant General Counsel; and Gregory W. Fortsch were on the brief for the appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

HOLDAWAY, Judge, filed the opinion of the Court. STEINBERG, Judge, filed a concurring opinion.

HOLDAWAY, Judge:

The appellant, William R. Moore, appeals a March 1997 decision of the Board of Veterans' Appeals (BVA or Board) which denied an earlier effective date for secondary service connection for residuals of a gunshot wound to the head. Both parties have filed briefs. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the decision of the Board will be vacated and the matter will be remanded for further adjudication.

## I. FACTS

The appellant served on active duty in the U.S. Air Force from January 1955 to April 1974, including service in Vietnam. The appellant has been rated as totally disabled based on individual unemployability since the date of his discharge. In October 1981, the appellant filed a claim for compensation for post-traumatic stress disorder (PTSD). In June 1982, a VA regional office (VARO) denied his claim for compensation on the grounds that he had not been diagnosed with PTSD. The VARO rating decision summarized the evidence of record as follows:

[The appellant] was admitted to [VA Medical Center], Decatur as a transfer from Kennestone Hospital with a self-inflicted [gunshot wound] to the right side of his head on 09–08–81. Following surgery to repair wound, vet.'s cognitive functions improved; however, remained triplegic with involvement of the left upper and lower extremities and the right lower extremity. VA [medical examination] showed history of depression, extreme preoccupation with back, pains in legs and reliance on alcohol. Following domestic disputes with wife in early part of Sept. vet. began to rely on alcohol again, broke into house where wife and son were sleeping and shot his wife in the leg. When police arrived vet. was standing on the porch armed with a pistol and when ordered to drop the gun, [he] placed it to his head and fired.

Since the appellant was not service connected for PTSD, the VARO denied secondary service connection for the residuals of his gunshot wound. The VARO also determined that the appellant was not competent to handle his own funds.

In April 1983, the appellant, through his service representative, filed a Notice of Disagreement (NOD) on the issue of the VARO's denial of service connection for his PTSD. The NOD listed several of the appellant's symptoms which he argued were indicative of PTSD including "suicide ideation and attempt." In May 1983, the VARO issued a Statement of the Case (SOC). The SOC framed the issue on appeal to the Board as "Service connection of post[-]traumatic stress disorder." In June 1983, the appellant filed his substantive appeal which framed the issue exactly as the SOC had. His substantive appeal did not make any new arguments, but rather referred to the arguments raised in his April 1983 NOD. In August 1983, the VARO issued a Supplemental Statement of the Case (SSOC) which restated the issue as written in the May 1983 SOC.

In June 1984, the Board remanded the appellant's claim back to the VARO in order to obtain the appellant's service records and for examination by two psychiatrists. The Board did not discuss the issue of secondary service connection for residuals of his gunshot wound. After obtaining this evidence, the VARO awarded his claim for PTSD in January 1985. The VARO established October 1981 as the effective date of his award, the date he filed his claim for compensation. The VARO also did not discuss the issue of secondary ser-

vice connection. In February 1985, the VARO wrote a letter to the appellant which stated that all of the benefits he sought had been granted and that his appeal would be taken off the docket at the Board.

In June 1987, the appellant filed a claim for secondary service connection for the residuals of his gunshot wound including paralysis of his left arm and leg. He sought service connection for these disabilities so that he could receive "specially adapted housing and van modifications" offered by VA. In August 1987, the VARO denied his claim. In October 1989, the VARO denied another attempt by the appellant to reopen his claim for secondary service connection. In that letter, the VARO stated:

> We were unable to allow his 1981 claim for paralysis and other residuals of a self-inflicted gunshot wound because the evidence did not establish that such injury was the proximate result of a service[-]connected disability. To reopen this claim, Mr. Moore should furnish new and material evidence showing a direct causal relationship between a service-connected condition and the suicide attempt.

Apparently in November 1989, the appellant again filed a claim for secondary service connection and submitted evidence in support of his claim. In January 1990, the VARO again denied his claim for secondary service connection and the appellant appealed that decision to the Board. In April 1992, the Board determined that the VARO had denied the appellant's claim for secondary service connection in June 1982 and that he had failed to appeal this decision. Since that decision had become final, the Board concluded that the appellant was then required to submit new and material evidence to reopen his claim. After a review of the record, the Board determined that the appellant had submitted new and material evidence and awarded secondary service connection for residuals of the appellant's gunshot wound. In De-cember 1992, the VARO assigned November 1989 as the effective date of the award, the date he had filed his claim. Again, the appellant appealed this decision to the Board contending that he should have been service connected for this condition since the time of the incident.

After reviewing the evidence, the Board concluded that the appellant was entitled to an effective date of October 1989, but that the preponderance of the evidence was against a finding of an effective date earlier than October 1989. The Board decided that the June 1982 and August 1987 rating decisions had become final and were subsumed by the April 1992 decision of the Board. The Board determined that clear and unmistakable error (CUE) could not exist in the April 1992 Board decision because Board decisions could not be reviewed on the basis of CUE.

## II. ANALYSIS

### A. NOD

The appellant argues that the Board erred by failing to adjudicate his claim for secondary service connection in June 1984. The Secretary counters by arguing that the appellant failed to file a timely NOD to the June 1982 VARO decision with respect to the issue of secondary service connection. The issue before the Court, therefore, is whether or not the appellant filed a timely NOD to contest the June 1982 VARO decision on the issue of secondary service connection.

An NOD is defined by regulation as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [VARO] and a desire to contest the result"; it "must be in terms which can be reasonably construed as [expressing] disagreement with that determination and a desire for appellate review". 38 C.F.R. § 20.201 (1998), *see Fenderson v. West,* 12 Vet.App. 119 (1999). To be valid, an NOD must be filed within "one year from the date of mailing

of notice of the result of initial review and determination" made by the VARO. 38 U.S.C. § 7105(b)(1); *see Fenderson, supra.* Whether a document constitutes a valid NOD is a question which the Court reviews de novo. *Fenderson, supra.*

■ Since the Board issued its decision, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has issued two opinions discussing what constitutes a valid NOD. *See Collaro v. West,* 136 F.3d 1304 (Fed.Cir.1998); *Ledford v. West,* 136 F.3d 776 (Fed.Cir.1998). In *Ledford,* the Federal Circuit held that an NOD must merely indicate disagreement with a particular determination while the appellant's substantive appeal "should set out specific arguments relating to errors of fact or law." *Id.* at 780 (quoting 38 C.F.R. § 20.202). In *Collaro,* the Federal Circuit held that the "statutory and regulatory regime that Congress created to protect veterans" allows a claimant to file a "vague NOD" and at a later time "cut the rough stone of his NOD to reveal the ... radix of his issue that lay within." *Collaro,* 136 F.3d at 1308–09. In other words, the Federal Circuit held that a valid NOD must merely express dissatisfaction with the VARO decision but need not identify the specific errors of fact or law. Although the Federal Circuit attempted to reconcile these two opinions, its effort to do so was not entirely satisfactory. The "radix" of the issue raised within an NOD can be murky indeed. *See Buckley v. West,* 12 Vet.App. 76 (1998) (Court's reconciliation of the Federal Circuit's decisions).

■ In this case, the Court finds the appellant's April 1983 NOD to the VARO's June 1982 rating decision to be sufficient to encompass the issue of secondary service connection. While the June 1982 rating decision stated that secondary service connection was at issue, it confined its discussion to the issue of service connection for the appellant's PTSD condition. In his NOD, the appellant likewise focused his attention on his PTSD condition. Any discussion by either the VARO or the ap-

pellant of conditions secondary to PTSD would have been premature until the issue of service connection had been resolved. Nonetheless, the appellant listed his suicide attempt as a symptom of his PTSD condition. This reference was of particular importance because it presented the issue of secondary service connection to the Board. In the Court's opinion, this reasonably placed the Board on notice that the issue of secondary service connection was still at issue. Therefore, the June 1984 Board decision erred by failing to adjudicate the appellant's claim for secondary service connection. Furthermore, the March 1997 Board decision erred by finding that the appellant had failed to submit a timely NOD on the issue of secondary service connection. On remand, the Board must adjudicate the issue of the effective date of secondary service connection based on all the evidence presently of record for the appellant claim dated October 1981.

## B. CUE

■ When a claim is denied by the VARO and the claimant fails to file a timely appeal to that decision as prescribed by 38 U.S.C. § 7105(b)(1), that decision becomes final. 38 U.S.C. § 7105(c). In the absence of new and material evidence, decisions which are "final and binding ... will be accepted as correct in the absence of clear and unmistakable error." 38 C.F.R. § 3.105(a) (1996), *accord Person v. Brown,* 5 Vet.App. 449 (1993). A claim for CUE concerning a final, unappealed VARO decision may not be considered when the Board has later reviewed the entire record and denied the benefits previously denied by the VARO decision. *See Donovan v. Gober,* 10 Vet.App. 404 (1997). The previous VARO decision will be considered subsumed by the later Board decision and may not be collaterally attacked. *Id.* The later Board decision may, of course, be collaterally attacked on the basis of CUE. *See* 38 U.S.C. § 7111.

■ In this case, the Board found that the April 1992 Board decision subsumed

the June 1982 and August 1987 VARO decisions. However, the April 1992 Board decision did not deny the benefits which had been previously denied by the VARO decision. Rather, the Board granted the benefits sought. According to this Court's holding in *Donovan*, the Board must deny the benefits sought in order for the earlier VARO decision to be subsumed. *See id.* It would be incongruous for a Board decision which granted the benefits sought to prevent a claimant from seeking an earlier effective date by attacking, via CUE, the previous VARO decision which had denied the claim. *See* 38 C.F.R. § 20.1104 ("When a determination of the agency of original jurisdiction is affirmed by the Board ..., such determination is subsumed by the final appellate decision."). Certainly if the CUE claim attacking a previous VARO decision had merit, the later Board decision would grant the benefits sought. The Board, therefore, erred by failing to consider the appellant's claim for CUE in the August 1987 VARO decision. The Court holds that the June 1982 VARO decision is not a final decision and the appellant cannot collaterally attack that decision until it becomes final.

## III.  CONCLUSION

Accordingly, the decision of the Board is VACATED and the matter REMANDED for further proceedings.

STEINBERG, Judge, concurring:

I join in the opinion of the Court and in its disposition of this appeal for the reasons stated in the opinion. I write separately to stress two points.

First, although I agree that the veteran's April 1983 Notice of Disagreement (NOD) (Record (R.) at 31) was "sufficient to encompass the issue of secondary service connection" based on the particular facts of this case, *ante* at 72, I would also hold, alternatively, that, as a matter of law, when a claimant seeks secondary service connection (here for residuals of a self-inflicted gunshot wound) and a Department of Veterans Affairs (VA) regional office (RO) denies that claim on the ground, as here, that the primary condition (here the veteran's post-traumatic stress disorder) is not service connected, then an NOD as to the VARO's denial of primary service connection inherently also expresses a disagreement as to the denial of secondary service connection. I believe that this conclusion follows from the general "pro-veteran" nature of VA law[1], under which VA is obliged to apply all applicable law to VA claims and to ensure that the maximum benefits possible under the law are awarded to those who have service-connected disabilities.[2] Hence, requiring a veteran to make specific reference to the secondary-service-connection issue when he or she is appealing the primary-service-

1. *See Brown v. Gardner*, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (requiring that when statute involving veterans' benefits is unclear "interpretive doubt is to be resolved in the veteran's favor", citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220–21, n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991)); *Hodge v. West*, 155 F.3d 1356, 1361, n. 1 (Fed.Cir.1998) (quoting *Gardner*); *Jones (Ethel) v. West*, 136 F.3d 1296, 1299, n. 2 (Fed.Cir. 1998) (same); *Allen v. Brown*, 7 Vet.App. 439, 446 (1995) (en banc) (same).

2. *See, e.g.*, 38 C.F.R. § 3.103(a) (1998) (Department of Veterans Affairs (VA) has an "obligation ... to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government"); *Suttmann v. Brown*, 5 Vet.App. 127,

132 (1993) (where a "review of all documents and oral testimony reasonably reveals that the claimant is seeking a particular benefit, the [Board of Veterans' Appeals (Board)] is required to adjudicate the issue of the claimant's entitlement to such a benefit or, if appropriate, to remand the issue to the [VA regional office] for development and adjudication of the issue"); *see also Solomon v. Brown*, 6 Vet.App. 396, 402 (1994); *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991); *cf. AB v. Brown*, 6 Vet.App. 35, 38 (1993) ("on a claim for an original or an increased rating, the claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation, and ... such a claim remains in controversy where less than the maximum available benefit is awarded").

connection issue appears to conflict with the requirement that submissions of VA claimants are to be read liberally and that VA claimants are not required to articulate claims with specificity.

I do not believe that the opinion of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Ledford v. West,* 136 F.3d 776 (Fed.Cir.1998), is inconsistent with this view. As this Court held in *Buckley v. West:*

> When read together and in the context of the prior precedent described above, *Ledford* and *Collaro* [*v. West,* 136 F.3d 1304 (Fed.Cir.1998)] support the proposition that this Court has jurisdiction over claims that an appellant has reasonably raised to the RO and that the [Board of Veterans' Appeals (BVA or Board)] has failed properly to adjudicate, and that the Court may entertain any arguments made in support of such claims when presented with a "vague" or general NOD or, at least, one that does not limit the Court's consideration of the arguments made. [*Collaro,* 136 F.3d at 1309; *Ledford, supra.*] Further, where the RO and BVA have failed to address an argument reasonably raised by a claimant in support of a claim over which the Court has jurisdiction by virtue of an NOD that satisfies [the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]], the Court will remand the claim with directions that the Board address the particular argument(s) in support thereof.

*Buckley,* 12 Vet.App. 76, 82–83 (1998).

Given the emphasis that the Federal Circuit placed in *Hodge v. West, supra* note 1, on the pro-claimant nature of the VA adjudication process and in light of that Court's holding in *Collaro, supra, Ledford* must be read as applicable only to a situation where the claimant expressly limits an appeal to the Board to a named claim by using specific words of limitation (e.g., "I wish to appeal only X claim" or,

"No other claim is appealed" or, "I do not seek to appeal Y issue") or at least must be read as not applicable to a situation where, as here, the NOD as to the primary-service-connection claim inherently implicates the basis for the denial of the secondary-service-connection claim. Moreover, again, as the Court stressed in *Buckley,* the Federal Circuit's opinion in *Ledford* dealt specifically with whether an NOD expressing disagreement as to a 1990 RO decision denying a 100% scheduler rating could be construed to be also an NOD as to an entirely different RO decision, one from 1981, which had addressed an entirely different issue (the termination of a 100% rating that had been assigned based on individual unemployability under 38 C.F.R. § 4.16(a) (1998)). *See Buckley,* 12 Vet.App. at 82 (discussing *Ledford,* 136 F.3d at 779–80). It was in that context that the Federal Circuit, quite understandably, held as follows in *Ledford:*

> Ledford had to have presented an NOD specifically challenging the 1981 determination in order to vest jurisdiction in the Court of Veterans Appeals over that determination. While his legal reasoning supporting such a challenge need not appear in the NOD, see 38 C.F.R. § 20.201 (1997) . . ., an NOD must have indicated a disagreement with a specific determination. This did not occur here with respect to the 1981 determination.

*Id.* at 780 (footnote omitted).

Second, I believe that it is important to stress one other matter about the Court's exercise of jurisdiction in today's opinion. The Court, in this decision, does not—and has no jurisdiction to—address the merits of the 1982 RO denial of secondary service connection (R. at 13), because that decision never became final due to its having been appealed to the Board and never having been decided by it. However, the Court's decision today as to the proper effective date for a secondary-service-connection award (over which we have jurisdiction by virtue of the October 1993 NOD (R. at 83) appealing the December 1992 RO decision

(R. at 79–81)) could not have been made without our considering whether the RO at the time of its 1982 decision had been obliged to adjudicate a secondary-service-connection claim. That is because, if such a claim had been filed and not yet been adjudicated, then the date that that claim was filed may affect the determination of the proper effective date for the award of secondary service connection—the issue here on appeal.[3] Hence, the Court is not presented here with a pending claim as to which it can only *note* the claim's pendency due to the veteran's having not filed a post-November 17, 1988, jurisdiction-conferring NOD under VJRA § 402, as was the case in *Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995). Rather, we are presented with evidence that a claim was filed earlier than the effective date assigned by the Board in the decision here on appeal, and the date of such filing is pertinent to the issue (effective date) over which we currently do have jurisdiction.

**3.** *See* 38 U.S.C. § 5110(a) ("[u]nless specifically provided otherwise in this chapter, the effective date of an award based on an original claim ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor"); 38 C.F.R. § 3.400(b)(2) (1998) (providing that effective date shall be date of receipt of claim or date entitlement arose, whichever is later); *Tucker v. West*, 11 Vet.App. 369, 372 (1998) (concerning effective date of original claim for service connection).