Citation Nr: 1138405 
Decision Date: 10/14/11 Archive Date: 10/19/11

DOCKET NO. 10-20 738 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Whether new and material evidence has been received to reopen a previously denied claim for entitlement to service connection for hypertension.

2. Entitlement to service connection for lumbar spine disorder (claimed as arthritis), to include as secondary to service-connected pes planus. 

3. Entitlement to service connection for hypertension, to include as secondary to service-connected posttraumatic stress disorder (PTSD). 

4. Entitlement to service connection for cardiovascular disease, to include as secondary to service-connected posttraumatic stress disorder (PTSD). 


REPRESENTATION

Appellant represented by: Mr. Brooks McDaniel


WITNESSES AT HEARING ON APPEAL

The Veteran and Ms. L. H., R.N. 


ATTORNEY FOR THE BOARD

J. Murray, Associate Counsel 

INTRODUCTION

The Veteran served on active duty in the United States Army from March 1943 to January 1946. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a July 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office in Roanoke, Virginia (RO). In that rating decision, the RO reopened a previously denied claim for service connection for hypertension, but denied the underlying claim on the merits. The RO also denied the claims for entitlement to service connection for cardiovascular disease and lumbar spine disorder-. 

As a matter of history, it is noted that in a January 2007 rating decision, the RO denied the claim for service connection for hypertension because the evidence did not show a chronic disorder related to service. In April 2008, the Board denied the claim for service connection. The Veteran did not appeal, and the April 2008 Board decision became final. In October 2008, the Veteran sought to reopen the claim. 

While the July 2009 RO decision declined to reopen the matter, for purposes of establishing jurisdiction, the Board is required to make a decision in the first instance as to whether new and material evidence was received warranting the reopening of this matter. See Barnett v. Brown, 83 F.3d 1380 (Fed. Cir 1996). The Board has recharacterized the issue accordingly to reflect the procedural status of the previously denied claim.

In July 2011, the Veteran testified before the undersigned during a Board videoconference hearing. A copy of the hearing transcript has been associated with the claims folder. Since that hearing, the Veteran has submitted additional medical and lay statements concerning his hypertension and cardiovascular disease. He has not submitted a waiver of initial consideration by the RO. The Board notes that none of the additional evidence appears to be pertinent to the issue of service connection for lumbar spine disorder. Accordingly, there is no prejudice to the Veteran for the Board to proceed with adjudication of the Veteran's claim for service connection for lumbar spine disorder without initial RO consideration of the additional arguments, or obtaining a waiver of initial RO consideration. See 38 C.F.R. § 20.1304 (2011).

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issues of entitlement to service connection for hypertension and for cardiovascular disease are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. In an April 2008, the Board denied a claim for entitlement to service connection for hypertension because the evidence of record did not show that hypertension was incurred in service or within one year thereafter, or was otherwise related to the Veteran's period of service. 

2. Evidence received since the April 2008 decision includes evidence that is not cumulative or redundant of the evidence previously of record and is sufficient, when considered by itself or with previous evidence of record, to raise a reasonable possibility of substantiating the claim.

3. A lumbar spine disability was not shown until many years after the Veteran's first period of service, and there is no medical evidence on file linking the current lumbar spine disorder to any aspect of the Veteran's period of service.

4. The preponderance of the competent medical evidence is against a finding that the Veteran's current lumbar spine disorder is proximately due to his service-connected pes planus disability. 


CONCLUSIONS OF LAW

1. The Board's April 2008 decision that denied the claim of entitlement to service connection for hypertension is final. 38 U.S.C.A. §§ 5107, 7104 (West 2002); 38 C.F.R. § 20.1100 (2011). 

2. New and material evidence has been presented to reopen the previously denied claim for service connection for hypertension. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2011).

3. The criteria for entitlement to service connection for lumbar spine disorder, to include as secondary to service-connected pes planus disability, have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

1. VA's Duty to Notify and Assist 

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the United States Department of Veterans Affairs has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). 

Initially, it is noted that specific to requests to reopen a previously-denied claim for service connection, VA must provide notice that describes the basis for the previous denial, as well as the reopening criteria and the criteria for establishing the underlying claim for service connection found to be unsubstantiated in the previous denial. See Kent v. Nicholson, 20 Vet. App. 1 (2006). Here, given the Board's favorable disposition of the petition to reopen the Veteran's previously-denied claim for service connection for hypertension, the Board finds that all notification and development actions needed to fairly adjudicate the appeal with regard to that issue have been accomplished. Any lapse in duties to notify or assist has not prejudiced the claim. 

With respect to the service connection claim, VA is required to notify the claimant of the information and evidence not of record that is necessary to substantiate the claim. VA will inform the Veteran of the type of information and evidence that VA will seek to provide, and of the type of information and evidence, the claimant is expected to provide. 38 C.F.R. § 3.159(b). VA must provide such notice to the claimant prior to an initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (AOJ), even if the adjudication occurred prior to the enactment of the VCAA. See Pelegrini v. Principi, 18 Vet. App. 112, 119-120 (2004). These VCAA notice requirements apply to all elements of a claim for service connection, so VA must specifically provide notice that a disability rating and an effective date will be assigned if service connection is awarded. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Here, VA sent a letter to the Veteran in April 2009 that addressed notice elements concerning his claim. The letter informed the Veteran of what evidence is required to substantiate the claim, and apprised the Veteran as to his and VA's respective duties for obtaining evidence. The notice letter also informed the Veteran on how to substantiate his claim based on secondary service connection. VA also informed the Veteran how it determines the disability rating and the effective date for the award of benefits if service connection is to be awarded. Dingess v. Nicholson, 19 Vet. App. 473 (2006). The Board finds that the VCAA duty to notify was fully satisfied as to the Veteran's claim.

In addition to its duty to notify, or inform, the Veteran with regard to his claim, VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records and records of pertinent medical treatment since service, and providing the Veteran a medical examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

In this case, VA has made reasonable efforts to obtain any available pertinent records as well as all relevant records adequately identified by the Veteran. VA provided the Veteran with a medical examination in June 2011, in which the examiner addressed the nature of the Veteran's disability and discussed whether it was etiologically related to the service-connected pes planus disability. 

No additional VA examination is necessary. Although the Veteran has not been afforded a VA examination to determine if lumbar spine disability is directly related to service, the evidence of record does not indicate that one is necessary to render a decision under the circumstances of this case. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also 38 U.S.C.A. § 5103A(d)(2), 38 C.F.R. § 3.159(c)(4)(i). 

Here, while the Veteran contends that his lumbar spine disorder was incurred during his period of service and he has testified that he has experienced similar pain since then. The Board finds such allegations of continuity of symptomatology not credible. See Caluza v. Brown, 7 Vet. App. 498 (1995). Specifically, the Veteran has provided inconsistent statements regarding the onset of his current lumbar spine disorder. During July 2011 Board hearing he testified that he has experienced lumbar spine pain since his period of service, however, the June 2011 VA examination report shows that the Veteran reported that his current lumbar spine disorder had an onset in 2001. Moreover, the June 2011 VA examiner opined that the Veteran's current lumbar spine disorder is most likely due to the natural aging and possibly the chronic use of prednisone for treatment of polymyalgia rheumatic. While there is no medical opinion that specifically addresses whether the Veteran's current lumbar spine disorder is directly related to his period of service, the only medical opinion provides a non-service related etiology for the Veteran's current disorder. There is no medical evidence of record that suggests otherwise. The Board finds that any medical opinion linking a currently diagnosed lumbar spine disability to service would be speculative at best. Since obtaining an additional examination would not provide any assistance in substantiating the Veteran's claim, VA has no further duty to assist in this regard. 38 U.S.C.A. § 5103A(a)(2).

The Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

For the foregoing reasons, the Board therefore finds that VA has satisfied its duty to notify and its duty to assist pursuant to the VCAA. See 38 U.S.C.A. §§ 5102 and 5103 (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.159(b), 20.1102 (2009); Pelegrini, supra; Quartuccio v. Principi, 16 Vet. App. 183 (2002).

2. Petition to Reopen Previously Denied Claim 

The Veteran seeks to reopen a claim of service connection for hypertension. In October 2008, the Veteran initiated the current claim on appeal. In a July 2009 rating decision, the RO reopened the previously denied claim because new and material evidence had been received, but denied the underlying claim on the merits. 

The Veteran's claim for service connection was previously denied by the RO and the Board. In a January 2007 rating decision, the RO denied service connection. The Veteran perfected an appeal to the Board. The Board's April 2008 decision affirmed the January 2007 rating decision, and that rating decision is, thereby, subsumed by the appellate determination of the Board. 38 C.F.R. § 20.1104. The Veteran did not appeal, and the Board's April 2008 decision became final. 38 C.F.R. § 20.1100. 

VA may reopen and review a claim that has been previously denied if new and material evidence is submitted by or on behalf of the veteran. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a); see also Hodge v. West, 155 F.3d 1356 (Fed. Cir. 1998). Before reaching the underlying claim of entitlement to service connection, the Board must first determine whether new and material evidence has been presented to establish its jurisdiction to review the merits of the previously denied claim. See Barnett v. Brown, 83 F. 3d 1380 (Fed. Cir. 1996). 

Under current VA law, "new" evidence is defined as evidence that has not been previously submitted to the agency decision makers; and "material" evidence is defined as evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. 38 C.F.R. § 3.156. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claims sought to be reopened, and it must raise a reasonable possibility of substantiating the claim. Id. 

VA is required to first review the evidence submitted since the last final disallowance of a claim on any basis for its newness and materiality. See Evans v. Brown, 9 Vet. App. 273 (1996). The evidence received subsequent to the last final decision in this case is presumed credible for the purposes of reopening a claim unless it is inherently false or untrue, or it is beyond the competence of the person making the assertion. Duran v. Brown, 7 Vet. App. 216, 220 (1995). 

Evidence of record at the time of the April 2008 Board decision consisted of the following: the Veteran's service treatment records, which included the Veteran's January 1946 separation examination report; VA medical records starting in 1977 that show a diagnosis of hypertension; and the Veteran's statements and testimony from various correspondences and from a February 2008 Board hearing. 

Based on the evidence of record at that time, the Board denied the claim for entitlement to service connection for hypertension. The evidence was against a finding that hypertension was incurred in service or within one year thereafter, or was otherwise related to the Veteran's period of service.

Evidence received subsequent to the Board's April 2008 decision includes August 2011 medical statements from M. K. C., MD and L.H., RN that provide a link between the Veteran's hypertension and his service-connected PTSD. The record also now contains the Veteran's assertions that he has experienced problems with high blood pressure since service and that he first received treatment for hypertension in the 1940's, shortly after his separation from service. 

The Board finds that the additional evidence received since the April 2008 Board decision relates to the unestablished fact necessary to substantiate the claim. Specifically, the additional evidence provided includes the Veteran's statements regarding continuity of symptomatology since service. The Board also notes that the Veteran has raised a new legal theory of entitlement based on secondary service connection and there is medical evidence that links the Veteran's current diagnosed hypertension to his service-connected PTSD. 

The Board finds that the additional evidence received since its April 2008 decision relates to the unestablished fact necessary to substantiate the claim. Specifically, the statements from Dr. C and Registered Nurse H. provide medical opinions relating the claimed disorder to the Veteran's service-connected PTSD. Such medical opinions of a nexus to service are sufficient, when considered by itself or with previous evidence of record, to raise a reasonable possibility of substantiating the claim. 

The Board accordingly finds that new and material evidence has been received to reopen the claim for entitlement to service connection for hypertension. The Veteran's appeal to reopen is granted to that extent. Discussion of the merits of the claim for service connection is in the Remand potion below.

3. Service Connection 

The Veteran seeks entitlement to service connection for lumbar spine disorder, claimed as arthritis. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110; 38 C.F.R. § 3.303(a). 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. See 38 C.F.R. § 3.303(b). The chronicity provision of 38 U.S.C.A. § 3.303(b) is applicable where the evidence, regardless of its date, shows that the Veteran had a chronic condition in service or during an applicable presumptive period and that he still has such condition. Such evidence must be medical unless it relates to a condition as to which, under the Court's case law, lay observation is competent. Savage v. Gober, 10 Vet. App. 488, 498 (1997). 

In addition, certain chronic diseases, including arthritis, may be presumed to have been incurred during service if they become manifested to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

To prevail on the issue of service connection, generally, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and 
(3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999).

In addition, a disability that is proximately due to or the result of a service-connected injury or disease shall be service connected. 38 C.F.R. § 3.310. When service connection is thus established for a secondary condition, the secondary condition shall be considered part of the original condition. Establishing service connection on a secondary basis requires evidence sufficient to show: (1) that a current disability exists, and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Id. A disability which is aggravated by a service-connected disorder may be service connected, but compensation is only available for the degree to which that condition was made worse by the service-connected condition - only to the degree that the aggravation is shown. 38 C.F.R. § 3.310. In such situation, VA laws require that the medical evidence must show a baseline level of severity of the nonservice-connected disease or injury, which is established by medical evidence created before the onset of aggravation. Id.

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C.A. § 7104(a); Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a). If there is at least an approximate balance of positive and negative evidence regarding any issue material to the claim, the claimant shall be given the benefit of the doubt in resolving each such issue. 38 U.S.C.A. § 5107; Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); 38 C.F.R. §§ 3.102. On the other hand, if the Board determines that the preponderance of the evidence is against the claim, it has necessarily found that the evidence is not in approximate balance, and the benefit of the doubt rule is not applicable. Ortiz, 274 F.3d at 1365.

In this case, the Veteran claims entitlement to service connection for lumbar spine disorder. He asserts that his lumbar spine disorder was first incurred during his period of service while he was performing his duties as a member of an artillery unit firing heavy artillery. Alternatively, he contends that his lumbar spine disability is proximately due to his service-connected pes planus disability. The Veteran has asserted that his pes planus disability alters his gait, and that this in turn, has caused the onset of arthritis in his lumbar spine. 

A review of the service treatment records from the Veteran's period of service does not show any complaints, treatment or diagnosis for low back problems. The report of a January 1946 examination prior to separation shows that the Veteran's spine was evaluated as normal. There is no associated report of medical history contained in the claims folder. 

The first medical evidence of any low back problems comes from a September 1993 VA medical statement in conjunction with a claim for nonservice-connected pension. This VA medical statement showed that the Veteran had a diagnosis of arthritis of the lumbar spine. Subsequent VA treatment records continue to show treatment for lumbar spine problems 

In June 2009, the Veteran underwent a VA examination. In that examination report, the examiner recorded that he had reviewed the claims folder. The examiner noted the Veteran reported that the arthritis in his lumbar spine was first revealed by x-ray evidence in 2001. The Veteran stated that he was not sure of what treatment he was given then, but he speculated that it was an over-the-counter medication. The examiner also noted that in 2008, the Veteran was diagnosed with polymyalgia rheumatic and was treated with prednisone. The Veteran denied being treated for back pain that was related to his bilateral foot condition. The Veteran complained of pain, stiffness and weakness in his back. He stated that his back pain is usually brought on by standing or leaning over. 

On physical examination, the examiner observed that the Veteran had normal posture and that his gait was slow, but it was otherwise normal. The Veteran had reduced range of motion in the thoracolumbar spine and the x-ray report of the spine revealed degenerative joint disease and probable osteoporosis. The examiner noted that the Veteran had diagnoses of osteoporosis and degenerative disc disease in his lumbar spine. The examiner concluded that the currently diagnosed lumbar spine disorder is not proximately due to or aggravated by his service-connected pes planus. The examiner opined that the most likely etiology of the Veteran's lumbar spine disorder was the effects of aging and possibly the chronic use of prednisone for polymyalgia rheumatic. The examiner stated that while the Veteran may have other unknown reasons for his osteoporosis, there was no biomechanical abnormality caused by his pes planus disability to contribute to or directly cause his current lumbar spine disorder. The examiner also found that there was no objective clinical evidence that connected the two conditions to each other in a causative or aggravation manner. The examiner stated that his opinion was based on a review of the claims folder, his interview of the Veteran, and the clinical findings from the examination. 

Initially, the Board notes that the evidence of record does not support a finding that the Veteran's lumbar spine disability is directly due to his period of service. The evidence of record does not show any complaints of back problems in service, at separation, or for many years afterward. 

The Board has considered the Veteran assertion that his current lumbar spine disorder had an onset during his period of service and his testimony that he has experienced low back pain since his period of service. The Board notes that it must consider the competency and credibility of the Veteran's lay contentions that he has experience back problems since his period of service. It is noted that the Veteran is competent to attest to the onset of symptomatology. The Federal Circuit has held that lay evidence is one type of evidence that must be considered, and that competent lay evidence can be sufficient in and of itself. The Board, however, retains the discretion to determine the credibility and weight of all the evidence submitted, including lay evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006).

Here, the record contains conflicting statements from the Veteran regarding the onset of his current back problems. While the Veteran testified during the July 2011 Board hearing that his current back problems had an onset during his period of service, the report of the June 2011 VA examination shows he reported an onset of 2001 for his current lumbar spine disorder. Neither during the Board hearing nor since then, has the Veteran provided any explanation for the discrepancy between his statements regarding the onset of his symptomatology.

In light of the inconsistent accounts by the Veteran as to the onset of his current lumbar spine disorder, the Board has to question the credibility of the Veteran's statements. See Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995) (Credibility can be generally evaluated by a showing of interest, bias, or inconsistent statement, and the demeanor of the witness, facial plausibility of the testimony, and the consistency of the witness testimony). Based on the lack of any supporting evidence of treatment and on the Veteran's conflicting statements, the Board finds that the Veteran is not credible to the extent that he reports the onset of his lumbar spine problems, and the Board must look to the other factors considering the onset of his disorder.

The record also does not show a continuity of symptomatology (or treatment) for any low back disorder, following separation from the Veteran's service in 1946 until 1993. This medical evidence comes well beyond the first year after the Veteran's discharge from his period of service. 38 C.F.R. § 3.307, 3.309. This lengthy period without treatment for related conditions is evidence against a finding of continuity of back problems since service, and it weighs heavily against a claim for service connection on a direct basis. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd, 230 F.3d 1330 (Fed. Cir. 2000) (service incurrence may be rebutted by the absence of medical treatment of the claimed condition for many years after service). 

Further, there is no competent medical evidence linking the Veteran's current lumbar spine disability directly to his first period of service. Rather, the only medical opinion of record links the Veteran's current lumbar spine disorder to the natural aging process or as etiologically related to his chronic use of prednisone to treat his polymyalgia rheumatic. 

Turning to the Veteran's alternative contention in this matter - a claim of secondary service connection - the remaining question is whether the medical evidence supports, or is at least in equipoise as to, the Veteran's assertion that his lumbar spine disability is related to his service-connected pes planus. See 38 C.F.R. § 3.310. Here, the weight of the medical evidence is against such a finding. 

The June 2011 VA examiner found that the Veteran's lumbar spine disability was not related to his service-connected pes planus. The VA examiner found that these conditions were two distinct problems and that they were separate from each other. Specifically, he stated there was "no biomechanical abnormality caused by his pes planus to contribute to or directly cause the clinical findings this [V]eteran has of his lumbar spine" and there was "no objective clinic evidence connecting the two conditions to each other in a causative or aggravative manner." See VA examination report dated in June 2011.

The Board finds it pertinent that there is no other medical opinion to the contrary. 

The Board has considered the Veteran's own assertions. The Board finds that the Veteran's assertions are afforded little probative weight in the absence of evidence that the Veteran has medical training that can provide the expertise to render opinions about medical matters. 

In this regard, the Board acknowledges the Veteran's assertions regarding a possible connection between his lumbar spine disorder and pes planus disability. The Veteran can attest to factual matters of which he had first-hand knowledge. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). However, the Veteran as a lay person has not been shown to be capable of making medical conclusions; thus, his statements regarding causation are not competent. See Bostain v. West, 11 Vet. App. 124, 127 (1998). Therefore, the Board finds the VA opinion to be far more probative than the Veteran's lay assertions, and service-connection is not warranted on a secondary basis.

In sum, the lumbar spine disability is not shown to be directly related to the Veteran's service. Additionally, the preponderance of the medical evidence of record is against a finding that the Veteran's lumbar spine disability is proximately due to his service-connected pes planus. See 38 C.F.R. § 3.310. As shown above, the VA examiner found that the Veteran's lumbar spine disability and pes planus were two distinct medical disorders that do not affect each other. The Board finds that the preponderance of the medical evidence is against an award of service connection on a direct or secondary basis. The benefit-of-the-doubt doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). The claim must be denied. 


ORDER

New and material evidence having been received, the petition to reopen the claim for entitlement to service connection for hypertension is granted. 

Entitlement to service connection for lumbar spine disorder, claimed as arthritis, is denied. 
REMAND

While VA has received additional evidence which is sufficient to reopen the Veteran's claim for service connection for hypertension, additional development is necessary prior to adjudication of the appeal on the merits. In addition, additional development is also needed prior to the adjudication of the claim for entitlement to service connection for cardiovascular disease. Specifically, a remand is required to provide the Veteran with a VA examination in conjunction with his claims.

Initially, as noted in the INTRODUCTION, the claims folder now contains new evidence involving the Veteran's hypertension and cardiovascular disease claims that has been received since the matter was last adjudicated by the RO in November 2010. The Veteran has not submitted a waiver of initial consideration of such evidence by the Agency of Original Jurisdiction (AOJ). See 38 C.F.R. § 20.1304 (2010). To ensure that the Veteran's procedural rights are protected, insofar as she is afforded the opportunity for RO adjudication in the first instance, the Board must return the case to the RO, for its initial consideration of the evidence.

The Veteran asserts that his hypertension and cardiovascular disease are caused or aggravated by his service-connected PTSD. He has submitted additional medical statements that support his assertions. See August 2011 private medical statements from M.K.C., MD and from L.H., RN, and medical literature. The Veteran has not yet been provided with a VA examination to obtain a medical opinion as to whether the hypertension and/or cardiovascular disease were caused or aggravated by his PTSD disability. 

The Board notes that, under 38 C.F.R. § 3.310 (a), secondary service connection may be found where a service- connected disability aggravates another condition (i.e., there is an additional increment of disability of the other condition, beyond the natural progression of the disease, which is proximately due to or the result of a service- connected disorder). Allen v. Brown, 7 Vet. App. 439 (1995). An amendment to 38 C.F.R. § 3.310, effective October 10, 2006, was enacted. See 71 Fed. Reg. 52744 (2006). The amendment essentially codifies Allen and adds language that requires that a baseline level of severity of the nonservice-connected disease or injury must be established by medical evidence created before the onset of aggravation. 

A remand is needed to provide the Veteran with a VA examination and to obtain a medical opinion regarding whether the medical evidence supports, or is at least in equipoise as to, the Veteran's assertion that his hypertension and/or cardiovascular disease are caused or aggravated by his service-connected PTSD. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2009). Expedited handling is requested.)

1. The RO/AMC should schedule the Veteran for a VA examination, with the appropriate specialist, to obtain a medical opinion as to whether the Veteran's hypertension and cardiovascular disease are caused or aggravated (permanently worsened) by the service-connected PTSD. The claims folder must be provided to and reviewed by the examiner in conjunction with the examination. All indicated tests and studies should be performed, and all findings should be set forth in detail. 

It is then requested that the VA examiner indicate whether it is at least as likely as not (i.e., 50 percent or greater probability) that the Veteran's diagnosed hypertension and cardiovascular disease are caused or aggravated by his service-connected PTSD. For purposes of this analysis, aggravation is defined as a permanent worsening of the nonservice-connected disability beyond that due to the natural disease process. The VA examiner should consider and discuss the findings contained in the medical statements from M.K.C., MD and L.H., RN, as well as, any other pertinent medical nexus evidence of record. 

A full rationale is requested for all opinions expressed by the examiner. If the examiner is unable to provide a requested opinion, he or she should explain why. 

2. After completing the requested action, and any additional notification and/or development deemed warranted, the RO/AMC should re-adjudicate the claims on appeal in light of all pertinent evidence and legal authority. If any benefit sought on appeal remains denied, the RO/AMC should furnish the Veteran and his representative with a supplemental statement of the case and afford the applicable time period during which the Veteran can respond. Thereafter, the RO/AMC should return the case to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

No action is required of the appellant until further notice. The Board will take this opportunity to advise the appellant that the conduct of the efforts as directed in this remand, as well as any other development deemed necessary, is needed for a comprehensive and correct adjudication of his claims. His cooperation in VA's efforts to develop his claims, including reporting for any scheduled VA examination, is both critical and appreciated. The appellant is also advised that failure to report for any scheduled examination may result in the denial of a claim. See 38 C.F.R. § 3.655.


These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2009).




______________________________________________
DENNIS F. CHIAPPETTA
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs